# Richmond.

## MERRYMAN AND OTHERS v. HOOVER.

### November 21, 1907.

#### Absent, Cardwell, J.

1. EJECTMENT—*Burden of Proof—Title at Commencement of Action.*—A plaintiff in ejectment must recover, if at all, on the strength of his own title, and not on the weakness of that of his adversary, and this title must exist in the plaintiff at the time of the commencement of his action. It cannot be acquired afterwards.

2. EJECTMENT—*Outstanding Legal Title—Subsequent Purchase.*—An outstanding legal title in another than the plaintiff, at the time of the institution of an action of ejectment, breaks in upon and disrupts the plaintiff's paper title and bars his recovery. Nor can the plaintiff make good the defect by the subsequent purchase of such outstanding title.

3. EJECTMENT—*Limitation of Actions—Disability of Tenant in Common.*— The disability of one tenant in common will not prevent the statute of limitations from running against other tenants in common not laboring under any disability.

4. INSTRUCTIONS—*Jury Sufficiently Instructed.*—The refusal of an instruction, even though it correctly propounds the law, is not ground for reversal of a judgment if other instructions given upon the same subject correctly propound the law, and are sufficient to enable the jury to apply the facts correctly.

5.—ADVERSE POSSESSION—*Land lying in two States—Forfeiture of Part.*— The forfeiture of part of a tract of land lying in West Virginia, under the laws of that state, cannot affect a tenant's claim by adverse possession to the residue of the tract lying in this state.

6. EJECTMENT—*Outstanding Legal Title in State.*—A defendant in ejectment may rely upon an outstanding legal title in the commonwealth at the time of the institution of the action, and thereby defeat the plaintiff.

Error to a judgment of the Circuit Court of Rockingham county in an action of ejectment.   Judgment for the defendant. Plaintiff assigns error.

*Affirmed.*

After the evidence had been introduced, the plaintiffs asked for the eight instructions, copied below.   The court gave Nos. 1, 2 and 3 as asked, modified No. 4 by striking out the words in italics, and refused *in toto* Nos. 5, 6, 7, and 8.   To the action of the court in modifying No. 4, and in rejecting Nos. 5, 6, 7 and 8, the plaintiffs excepted.   The instructions, as asked, are as follows:

"1. The court instructs the jury that if they believe from the evidence that the plaintiffs have shown a sufficient paper title to Chambers and Clopper survey, claimed by them, including the tracts of land in controversy in this cause, and claimed by the defendant as follows, to-wit: The Keister tract of 117 acres, the Camphor tracts of 12½ acres, 50 acres and 59 acres, and the Dyer tract of 72 acres, or either of them, or any part of them, then they must find for the plaintiffs, unless they believe from the evidence that the defendant has shown that he, or those under whom he claims have shown that the Dyer tract, or part thereof, is within one of the reservations in the patent, in which event they shall find for the defendant as to said tract, or such part of said tract as they may find to be within the reservation; and as to the other tracts prior to the institution of this suit, held for fifteen years actual, continuous, visible, exclusive and adverse possession of the said tracts of land, or either of them, in the manner defined and limited by the other instructions to be taken and read in connection with this instruction, in which event they must find for the defendant; but that, in order to constitute such adverse possession, sufficient in law, there must be an actual occupation of the same, or else the use and enjoyment of the same by such open, notorious and habitual acts of

ownership as would be equivalent to actual occupation, and that such adverse possession must be by residence, inclosure, cultivation, or by acts of use and enjoyment aforesaid, accompanied by such change in the character of the land as would convert the same from wild lands into improved lands suitable for the purpose to which it is adapted, or by other acts as aforesaid, which are equivalent to such residence, or inclosure, or cultivation.

"2. The court further instructs the jury that if they believe from the evidence that part of the fence claimed by the defendant to have inclosed the tract known as the Keister tract in controversy in this case, extends beyond the lines of the plaintiffs to an adjoining tract owned by others, or owned by the defendant himself, and that the tract of land in controversy, known as the Keister tract, is not inclosed without embracing other lands outside of its limits, by a fence located some distance from the premises claimed by the defendant, to which the plaintiffs have no claim of title, or if they find from the evidence that said fence is on the lands of the plaintiffs in part and included land to which the defendant disclaims title, then such inclosure alone is not sufficient to constitute actual, exclusive, continuous visible and adverse possession of said tract, and if they further believe from the evidence that this is the only evidence of adverse possession under which the defendant can sustain his defense of adverse possession, they must find for the plaintiffs as to the same.

"3. The court further instructs the jury that, in order to constitute such adverse possession by inclosure alone, it is necessary that such inclosure should be of a substantial and permanent character, and that such inclosure must not be without the bounds of the land in controversy as claimed by the defendant in his plea, but upon lands to which the defendant claims title in himself;

"And the court further instructs the jury that the defendant cannot claim that any natural barriers, or cliffs, constitute such

inclosure, unless the same was upon the line, or within the limits of the lands claimed by the defendant in his plea; and if the jury believe from the evidence that the inclosure relied upon by the defendant in this case as constituting adverse possession was not of a permanent and substantial character, or was not on the lands of the defendant, as set forth in said preceding instruction, as to said tracts or either of them, they must find for the plaintiff as to said tract or tracts.

"4. The court further instructs the jury that if they believe from the evidence that the adverse possession claimed by the defendant was broken and interrupted at any time after the month of October, 1880, the date of the death of Edward Nicholas Clopper; and if they further believe from the evidence that the heirs at law of the said Edward Nicholas Clopper have been under disabilities since the said date, then there can be no new adverse possession as against them, *and there being no adverse possession as against them, there can be no exclusive and adverse possesion as against the other parties in interest, their co-tenants, and they must find for the plaintiffs.*

"5. The court further instructs the jury that if they believe from the evidence that the lands in controversy have been used for fifteen years prior to the institution of this suit for the grazing of live stock upon it, that it is not enclosed by a permanent and substantial fence, and that those who have lived upon it in a great many cases, have not remained upon it during the winter seasons; but that the premises have been frequently left vacant from the fall of the year unto the spring of the year following, and, moreover, that in one or more years the land was not occupied in the summer, except in the grazing of cattle, during the pasture season, then such use of said lands was not continuous, actual, adverse possession, even though cabins or houses were built upon the property, and if they further believe from the evidence, this is the only adverse possession proven, they must find for the plaintiffs.

"6. The court further instructs the jury that if they believe

from the evidence that the Keister and the three Camphor tracts of land lie on the top of the Shenandoah Mountain, and that part of the said several tracts of land lie on the West Virginia side, and part on the Virginia side, as shown by the black lines on the plats made by Jasper Hawse, the surveyor, filed with his report of survey, and that the title under which the defendant claims said tracts of land was forfeited on the West Virginia side by failure to enter said tracts of land upon the land assessment books of Pendleton county, in the state of West Virginia, for the years 1869 and 1874, and some years thereafter, and that said tracts of land were sold by the commissioner of school-lands for the county of Pendleton, and the title vested in others, on April 13th, in the year 1887, they are further instructed that no adverse possession of such parts of said tracts of land lying on the West Virginia side can be claimed as against the state of West Virginia, so that the defendant could only plead adverse possession to such parts of said tracts of land since the date of said sale;

"And if they further believe from the evidence that the inclosure under which the defendant claims actual possession of said tract of land included within it those parts of said land which lie in the state of West Virginia, and which are forfeited as aforesaid, then the possession of the remainder of said tracts of land was not exclusive, and could not be availed of by the defendant during that period, as adverse possession of the parts of said land lying in the state of Virginia.

"7. The court further instructs the jury that if they believe from the evidence that the tract of land known as the Chambers & Clopper survey, which includes the tracts of land in controversy in this cause, was assessed upon the land books of Rockingham county, in the name of James B. Price, and that said tract of land was sold in the year 1886, for the taxes of 1876 to 1883, and was bought by the auditor of the state of Virginia for the benefit of the state, county and district, and that said tract of land remained unredeemed until the 28th day

of April, 1900; then they are further instructed that the period from the date of said sale to the auditor as aforesaid, to the time of the institution of this suit, must not be included in the period of fifteen years, during which the defendant must show adverse possession in order to claim title by such possession to any part of the said tract of land.

"8. The court instructs the jury that adverse possession cannot consist merely of the cultivation of small parcels of land in potatoes and turnips for a season or two, inclosed by a fence, constructed of trees cut down so as to lap upon one another, with the space between filled in with logs or brush, or by both, and then abandoning such patches and the inclosure, and allowing the inclosure to go down and to nothing, and the patches to go into sod, and then clearing and cultivating other patches in the same way on other portions of the land from season to season, and from place to place; and. if they believe from the evidence that this is the only adverse possession proven as to said tracts, or either of them, they must find for the plaintiffs as to such tract or tracts of land."

The defendant then tendered the following six instructions, which the court gave over the objection of the plaintiffs, and the plaintiffs again excepted:

"1. The jury are instructed that the plaintiffs must recover, if at all, on the strength of their own title, and cannot rely on weakness in title of the defendant; and the plaintiffs must show a good legal title and right to the possession of the land in controversy at the time this action was brought, and if they believe from the evidence, that at the time of the institution of this suit the plaintiffs were not possessed of a good legal title to the land in controversy, and entitled to the possession thereof at that time then they must find for the defendant.

"2. The jury are instructed that if they believe from the evidence that the tract of land called the 'Sugar Camp,' claimed by the defendant in this cause or any part thereof, is the land

reserved in the Chambers and Clopper patent as the 50 acres reserved to Gawin Hamilton on Skidmore's Fork, they must find for the defendant as to that tract, though the actual area may be more than 50 acres.

"3. If the jury believe from the evidence that James B. Price in his lifetime conveyed the land in the declaration mentioned, or that part of it lying in Rockingham county, or his interest in said land, to the Rawley Iron & Coal Company; they must find for the defendant as to such interest as the said James B. Price had in said land at the time of the conveyance, unless they further believe from the evidence that the said James B. Price or the plaintiffs or those under whom they claim afterwards became re-invested with good title to the land or interest so conveyed to said Rawley Iron & Coal Company, before the commencement of this action, or such outstanding title was otherwise extinguished; and the court further instructs the jury that the deed from James B. Price to the Rawley Iron & Coal Company, dated June 14, 1883, is on its face an absolute conveyance of said land to the extent of the interest of the said James B. Price therein.

"4. The jury are instructed that in order to constitute adverse possession, it is not necessary that the land should be enclosed or built upon, but the entry by the defendant and those under whom he claims, must have been made under a claim of title with the intention of taking possession, and be accompanied with such visible, actual, adverse, continuous and exclusive acts of ownership as from their nature indicate a notorious claim to and possession of the property, and if they believe from the evidence that the defendant and those through whom he claims, took possession under a claim of title of the land in controversy, and have continuously for the period of fifteen years before the commencement of this action, exercised such actual, hostile, visible and exclusive acts of ownership over the lands as, from their nature, indicated a notorious claim to and possession of the property, they must find for the defendant.

"5. The court instructs the jury that, while it is a principle of law that wild lands are not susceptible of adversary possession by one claiming title thereto against the owner of the true title, yet this rule extends to such lands only so long as they remain in a state of nature; and though the jury believe from the evidence that the land in controversy was wild land when conveyed by Moses Joseph to William Hoover and John C. Joseph, in March, 1868, yet, if they further believe from the evidence that the defendant and those under whom he claims, going back only to the deed from Moses Joseph in 1868, entered upon the land in controversy under a paper title, making *bona fide* claim thereto under said title, and not as mere trespassers or squatters, and by their acts of ownership thereon affected a substantial change in the condition of the land in the way of converting it from its wild state, and that these acts were accompanied by exclusive and notorious dominion over the land and by actual, exclusive, visible and notorious use and enjoyment thereof, in such manner as the land was best suited to, then the court further instructs the jury that such acts, dominion and use together constituted adversary possession of said land, whether the premises were inclosed or not and whether occupied by actual residence or not, and if the same continued without interruption for a period of fifteen years before the commencement of this action, the jury must find for the defendant.

"And the court further instructs the jury that adversary possession, as above defined, of any part of any one of the parcels of land claimed by the defendant, constitutes possession by defendant of the whole of such parcel to the limit of its boundaries as indicated in his title papers; but possession of a part of one parcel cannot be so extended as to constitute possession of another parcel unless co-terminous with it.

"6. If the jury believe from the evidence that William Hoover, under whom the defendant claims the land in controversy, sold the said land to Samuel Frank under an executory

contract, which contract was afterwards rescinded and the property turned back to said Hoover, then the jury is instructed that the possession of said land by Frank, if he had possession, is to be considered as possession by the defendant and those under whom he claims, for the purpose of making out the statutory period of fifteen years."

*John E. Roller* and *Sipe & Harris,* for the plaintiffs in error.

*Conrad & Conrad,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

Mary C. Merryman and others filed their declaration in ejectment at August Rules, 1895, in the circuit court of the county of Rockingham, against Isaac Hoover, to recover certain real estate therein described. Hoover appeared and disclaimed title and interest as to certain parts of the land demanded, and as to the residue, pleaded not guilty. The jury sworn in the case, on the 4th of October, 1905, found a verdict for the defendant, upon which judgment was entered, and the plaintiff procured a writ of error from this court, and, in their petition, assign as errors committed by the trial court:

First: That, after the plaintiffs had introduced their evidence of title to the lands in controversy, the defendant offered a deed from James B. Price, under whom plaintiffs claim in part, to the Rawley Iron & Coal Company, bearing date the 14th day of June, 1883, and duly admitted to record in the clerk's office of Rockingham county on the 18th day of June of the same year, which purported to convey the land in dispute in fee simple; it being intended by the defendant, by the introduction of this deed, to show that, in so far as they claimed under James B. Price and his heirs, there was such an outstanding title in another as defeated the right of plaintiffs to recover.

In order to meet this contention, the plaintiffs offered in

evidence the record of the chancery cause entitled *Price, &c.,* v. *Rawley Iron & Coal Company,* including the final decree therein, entered on the 6th day of June, 1905, before the trial of the ejectment suit, holding that the deed of the 14th day of June, 1883, and the deed of trust executed by the Rawley Iron & Coal Company contemporaneously therewith on the lands in controversy, constituted no blot upon the title of those claiming under James B. Price and the heirs at law of Nicholas Clopper, deceased, and no impediment to the assertion of their title. To the introduction of this record the defendant objected, on the ground that all that was necessary to defeat the action of the plaintiffs was for the defendant to show that such outstanding title existed at the date of the commencement of said action, to-wit, on the 13th day of August, 1895; and inasmuch as the deed of June 14, 1883, was duly admitted to record on the 18th day of June, 1883, and there had been no reconveyance of the land to the plaintiffs, or those under whom they claim, before the 13th day of August, 1895, such outstanding title at the time the suit was brought was conclusive of the right of the plaintiffs and it was not competent for them to show that the alleged outstanding title had been divested in any way, or that the plaintiffs, or those under whom they claimed, had been reinvested with title to the land in controversy subsequent to the date of the institution of the suit. This objection was sustained by the circuit court, which refused to permit the record in the chancery cause to be offered in evidence.

The precise contention of plaintiffs in error upon this point is that, while it is true that a plaintiff in ejectment must recover upon the strength of his own title, and not upon the weakness of that of his adversary, and that an outstanding title in another may be shown in order to defeat the plaintiff's right of action, such outstanding title must be a present outstanding, operative and available legal title, on which the owner can recover against either of the contending parties if asserting it by action.

Section 2725 of the Code, treating of actions in ejectment, says: "No person shall bring such action unless he has at the time of commencing it, a subsisting interest in the premises claimed, and a right to recover the same, or to recover the possession thereof, or some share, interest or portion thereof."

It would seem that this section is conclusive; but we will supplement it by the addition of adjudicated cases.

In *Suttle* v. *R., F. & P. R. Co.,* 76 Va. 284, Judge Staples, speaking for the court, said: "The doctrine generally understood in Virginia is that in ejectment the plaintiff must show a legal title in himself, and a present right of possession under it at the time of the commencement of the action. To this doctrine some exceptions exist—for instance, one in peaceable possession, and ousted by a stranger without title, may recover in ejectment on the strength of his mere previous possession; and a tenant is estopped to deny the title of his landlord."

None of the exceptions, however, exist in this case, and need not be considered.

In Warvelle on Ejectment, at section 228, it is said: "The same principle which, under the old practice, when the names of fictitious parties were used, prevented a recovery by the plaintiff unless he showed himself entitled to the possession at the time of the demise laid in the declaration, has remained practically unchanged through all the mutations to which the action has been subjected. The plaintiff must recover, if at all, upon his legal title as it stood at the commencement of the suit, or, as stated by many of the authorities, at the time alleged in the declaration that he had title, and it has been held in some cases that where the title displayed in evidence is shown to have accrued after such time, even though before the commencement of the suit, he cannot recover. The general rule, however, is as first stated, and under this rule, if the plaintiff is without legal title at the time of commencement of his suit, he cannot recover, notwithstanding he may have had an equity which ripened into a legal title after the suit was brought. He

must recover, if at all, upon his title as it existed at the institution· of his suit, and even though he has the legal title, yet, if, at the time suit was commenced, his right of possession was intercepted for any valid cause, he cannot recover, even though such intercepting cause is subsequently removed." Numerous authorities are cited in the note to this section, which fully sustain the text.

To the same effect is Newell on Ejectment, p. 360, sec. 7.

In Tyler on Ejectment, p. 75, it is said, that "The rule at common law, and in all of the states which have preserved the distinction between legal and equitable titles to land, is that the plaintiff in ejectment must show a legal title in himself to the lands he claims, and the right of possession under it, at the time of the demise laid in the declaration, and at the time of the trial. He cannot support the action upon an equitable title, however clear and indisputable it may be, but must seek his remedy in chancery." There are cases which hold that after the purpose of a trust deed has been satisfied, the *cestui que trust* may maintain ejectment upon a demise in his own name, although the legal estate is still in the trustee. *Hopkins* v. *Ward,* 6 Munf. 38. But, without expressing any opinion upon that line of decisions, it is sufficient to say, that the case before us is not within them, for here there is an absolute deed from James B. Price, under whom plaintiffs in error claim, to the Rawley Iron & Coal Company, and a deed of trust executed by the Rawley Iron & Coal Company to the Guarantee Trust & Safe Deposit Company of Philadelphia, a corporation chartered under the laws of the Commonwealth of Pennsylvania.

In Adams on Ejectment (ed. of 1854), at p. 33, it is said to be a maxim of our law, that the party in possession of property is considered to be the owner, until the contrary is proved. It is necessary, therefore, for a claimant in ejectment to show in himself a good and sufficient title to the disputed lands. He will not be assisted by the weakness of the defendant's claim, for the possession of the latter gives him a right against every

man who cannot establish a title; and if he can answer the case on the part of the claimant by showing the real title to be in another, it will be sufficient for his defense (excepting, of course, those cases in which the defendant is estopped from disputing the claimant's title), although he does not pretend that he holds the lands with the consent, or under the authority of the real owner."

The doctrine as to the title upon which a plaintiff must recover, if at all, in an action in ejectment, established by the cases and text-writers already quoted, is maintained in all its rigor by the Supreme Court of the United States. See *McNitt* v. *Turner*, 16 Wall. 352, 21 L. Ed. 341; *Moorehouse* v. *Phelps*, 21 How. 294, 10 L. Ed. 140; *Sheirburn* v. *D'Cordover*, 24 How. 423, 16 L. Ed. 741.

The outstanding title under consideration is evidenced by a deed from James B. Price and wife, under whom the plaintiffs claim part of the lands in controversy, purporting to convey an absolute title in fee simple to the Rawley Iron & Coal Company, a corporation of this state. The deed was executed on the 14th day of June, 1883, and was admitted to record on the 18th day of the same month. The Rawley Iron & Coal Company, grantee in the deed from Price, conveyed the same land to the Guarantee Trust & Safe Deposit Company of Philadelphia, a corporation chartered under the laws of the commonwealth of Pennsylvania, and this deed was admitted to record on the 18th day of June, 1883. The suit in chancery, brought with the object of cancelling these deeds and reinvesting the plaintiffs with the legal title, was not instituted until April, 1901, six years after the institution of the action in ejectment; and the final decree was not entered until the 16th day of June, 1905, ten years after the institution of the action in ejectment, and a few months before it was tried. The effect of those deeds was not only to constitute a sufficient ground of defense to the action of ejectment by showing an outstanding title in another, but they went to the very root and heart of the plaintiff's case,

broke in upon and disrupted their paper title, and established beyond controversy that, at the date of the demise laid in the declaration and at the institution of the suit, they did not have "a subsisting interest in the premises claimed and a right to recover the same, or to recover the possession thereof, or some share, interest or portion thereof." Code, sec. 2725.

We shall deal, however, more specifically with the contention of plaintiffs in error. Their position is that, while they must recover upon the strength of their own title, and not upon the weakness of that of their adversary, yet, if the defense rests upon an outstanding title in another, that title must be shown to be one which was a present, subsisting, operative legal title at the time of the trial of the case, and that, at the time of the trial, a court of competent jurisdiction had annulled the deeds from Price to the Rawley Iron & Coal Company, and from that company to the Guarantee Company; and that, therefore, it was not a present, outstanding title in another.

We think it has been made to appear that plaintiffs in error did not show a legal title in themselves at the institution of the suit; but, taking their case as they present it, they must equally fail.

With respect to the general principle as to the character of outstanding title which may be relied upon as a defense, there can be no doubt. It is fully established, so far as this court is concerned, by the decision in *Reusens* v. *Lawson*, 91 Va. 243, 21 S. E. 347, where Judge Buchanan says: "An outstanding title, sufficient to defeat a recovery in an action of ejectment, must be a present, subsisting and operative legal title, upon which the owner could recover if asserting it by action." For instance, if the statute of limitations constituted a bar to the outstanding title, it could not be set up as a defense; but to hold that a plaintiff could, after the institution of his suit, acquire from another an otherwise valid title, and thus make good the defect in his own title, would be at war with the fundamental principle recognized in all common law courts by innumerable

adjudicated cases, by all the text-writers, and crystalized into a statute in this state, that the plaintiff in an action of eject-ment must have in him the legal title at the institution of his suit.

We shall now consider the authorities relied upon by plain-tiffs:

In *Jackson* v. *Todd,* 6 Johnson (N. Y.) 257, the facts are somewhat complicated, but a careful reading of the report will show that the deed from Dunbar, under whom Jackson claimed, to Brooks, which the defendant Todd relied upon as defeating the chain of title from Dunbar through Macy and others to Jackson, the plaintiff, was not a subsisting outstanding title at the date of the institution of the suit.

In *Jackson* v. *Hudson,* 3 Johnson (N. Y.) 375, 2 Am. Dec. 500, the general principle as to the character of the outstanding title as set out in *Reusens* v. *Lawson, supra,* is affirmed, and under the circumstances of that case, it was held that the lapse of time, during which no claimant under the alleged outstand-ing title had appeared, had been so great that the presumption was irresistible that it was no longer a subsisting title; and the further and decisive objection made to the outstanding title, that it did not appear to have been duly executed.

The case of *Perryman's Lessee* v. *Callison,* 1 Tenn. 515, is cited to show that, where the defendant is permitted to set up a title in a third person, the plaintiff having first shown a *prima facie* good title in himself at the time of bringing the action may show, that since the issue joined, he had procured the title of such third person. And the case, upon inspection, seems to be authority for that proposition. Turning, however, to the case of *Miller's Lessee* v. *Holt,* in the same volume, at p. 308, the question was whether it was competent for the defendant to show a better subsisting title out of the lessor of the plaintiff, and the court said: "Possession is always favored, and of itself, with color of title, is a title against all the world except the person having the best title. The law of England on the

subject, is too clear to admit of doubt, nor could any reason be seen why the law should not apply here as well as there."

In *Crockett* v. *Campbell,* 2 Humphreys 411, the supreme court of Tennessee held, that deeds made after the commencement of a suit, confirming and ratifying deeds made before the commencement of the suit, are admissible in evidence, the court saying: "If the deeds confirmed were executed and properly proved and registered before the suit was commenced, they would pass the title by force of this confirmation, and vest it in the bargainee from their date. The deed of confirmation makes the acts of the attorney good at the date they were performed.

In *Lewis* v. *Curry,* 74 Mo. 49, it was held, that a plaintiff in ejectment may recover upon a deed obtained after the date of the demise laid in the petition; but upon looking to the facts, it will appear that, while the deed was obtained after the date of the demise laid in the declaration, it was prior to the institution of the suit; the court saying in its opinion, that there is nothing in the point that the demise laid in the petition is the 1st day of March, 1876, while the deed was made on the 27th day of April, 1876.

In *Martin* v. *Parker,* 26 Tex. 253, much relied upon by plaintiffs in error, the court, speaking of the outstanding title relied on in that case, said: It would seem that it "was barred by the statute of limitations when set up by the intervenor; or, if not barred, it was extinguished by having been bought in by the plaintiff before the trial. It was not a present, subsisting and operative title at that time, and could not, therefore, defeat a recovery by the plaintiff. The latter having, *prima facie,* a good title at the time of instituting the suit, had a right to protect himself by buying in the outstanding title, even after issue joined." Citing the cases which we have already considered. That case seems to be authority for the position of plaintiffs in error, but it stands alone.

In *Mexie* v. *Lewis,* 87 Texas 208, 22 S. W. 397, it is said: "It is laid down in this court as a general rule, that the plaintiff

in an action of trespass to try title, must recover upon his title as it existed at the time of the institution of the suit; and that in order to avail himself of an after-acquired title, he must amend so as to avail himself of it as a new cause of action. An exception has been recognized in a case in which the plaintiff when he brings his suit has the superior title as against the defendant, and subsequently buys an outstanding title for the protection of that which he formerly held. *Martin* v. *Parker,* 26 Texas 254. This case does not fall within that exception. Nor, in our opinion, does it come within any other exception which has been recognized by this court."

*Wilson* v. *Braden,* 48 W. Va. 196, 36 S. E. 367, maintains the general proposition, that "an outstanding title in a third person, in order to defeat the plaintiff's recovery in ejectment, must be a present, subsisting, legal title, not one barred by the statute of limitations, abandoned or otherwise lost. It must be one which the party owning it could now assert. The burden is on the defendant to show the present validity of such title." But it is not authority for the proposition that it may be acquired by the plaintiff in ejectment after the institution of his suit, in order to mend a gap in his own title.

We are of opinion, therefore, that there was no error on the part of the circuit court in refusing to permit the record of the chancery suit of *Price* v. *Rawley Iron & Coal Co.* to be introduced in evidence in this case.

We think the modification made by the court in instruction No. 4, offered by plaintiffs in error, was clearly right, and that the law is correctly stated in Malone on Real Property Trials, at p. 293, where it is said: "If several tenants in common having a cause of action, one of whom is under disabilities and the others not, those under no disabilities will be barred by the statute, while the one under disabilities may recover. Each tenant in common has a right to sue and recover his interest; therefore, it is no excuse to say that a co-tenant was under disabilities."

We think that there was no error to the prejudice of plain-
tiffs in error in refusing Instruction No. 5, even though it be
conceded that it correctly propounded the law, for the court
subsequently, at the instance of defendant in error, gave to the
jury correct instructions upon the subject of adversary posses-
sion, very properly confining itself to the general principles of
law controlling in such cases and leaving it to the jury, subject
to the supervision of the court, to apply the principles to the
facts in issue, rather than undertake to summarize those facts
gathered from a voluminous record and present them to the
jury, as was done in the instruction asked for, at the peril of
omitting some fact which the evidence tended to prove, or of
embracing some fact not sufficiently proved. This court has
said in numerous cases, that the refusal of an instruction, even
though it correctly propounds the law, will not be ground for
reversal, if other instructions to the jury, upon the same sub-
ject, were sufficient to enable them correctly to apply the facts.
The same principle obtains in other courts.

In *Armstrong* v. *Morrill*, 14 Wall. 120, 20 L. Ed. 765, it is
said: "Where the instructions given were in all respects suffi-
cient to dispose of the controversy, it is not error to refuse to
give further instructions."

Instruction No. 6, offered by plaintiffs in error, was properly
refused. · The circuit court of Rockingham county had no juris-
diction over the land lying in West Virginia, and the forfeiture,
under the law of that state, of so much of those parts of the
original tracts of land as lay within its borders could not affect
defendant's title by adversary possession to lands lying within
this commonwealth, and within the jurisdiction of the circuit
court of Rockingham county.

Nor were plaintiffs in error prejudiced by the refusal of
the court to give Instruction No. 7, for, if the facts upon which
that instruction is predicated be true, then the plaintiffs were
out of court; for the same title in the commonwealth which
was sufficient to disrupt the continuity of defendant's adverse

possession, was equally efficacious to break the plaintiffs' chain of title; in other words, if the title was in the commonwealth at the institution of the suit, and was not restored to plaintiffs in error until the 28th of April, 1900, then, upon the authorities considered, with reference to the first assignment of error, there could be no recovery, for, as was said by this court in *Reusens* v. *Lawson, supra,* "There is no reason why a defendant in an action of ejectment should not be permitted to rely upon an outstanding legal title in the commonwealth.    The plaintiff must rely upon the strength of his own title, and if it appear in the cause that the legal title is in another, whether that other be the defendant, the commonwealth or some other person, it shows that the plaintiff has not the legal title, and it is, therefore, sufficient to defeat his recovery."

In support of this assignment, plaintiffs in error rely upon *Armstrong* v. *Morrill, supra.*   In that case (which, by the way, went from West Virginia, and involved, to some extent, a construction of the laws of that state prior to 1861), the defendant relied upon adversary possession, and it appeared from the facts that, during a part of the period necessary to bar the plaintiff's action under this plea, the title had been forfeited to the state; and the court held that this broke the continuity of the adversary possession, and that the two disjointed parts could not be computed in order to maintain the plea, the court saying: "Continuity of possession is one of the essential requisites to constitute such adverse possession as will be of efficacy under the statute of limitations.   Whenever a party quits the possession, the seisin of the true owner is restored, and a subsequent wrongful entry by another constitutes a new disseisin, and it is equally well settled that if the continuity of possession is broken before the expiration of the period of time prescribed by the statute of limitations, an entry within that time destroys the efficacy of all prior possession, so that to gain a title under the statute a new adverse possession for the time limited must be taken for that purpose."   But it also ap-

pears in that case, that before the institution of the suit, the plaintiff had redeemed the land, which had theretofore been forfeited to the commonwealth, and his full fee simple title had been restored to and was vested in him.

Upon the whole case, we are of opinion that the jury was correctly instructed, and, without discussing the evidence in detail, that the facts were sufficient—certainly when viewed, as we are bound to view them, as upon a demurrer to evidence—to sustain the verdict of the jury.

The judgment of the circuit court is, therefore, affirmed.

*Affirmed.*