# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## ROLLER v. ARMENTROUT.

November 11, 1915.

Absent, Keith, P.

1. ADVERSE POSSESSION—*What Constitutes—Case in Judgment.*—One who lives in a dwelling house on an enclosed tract of land, and has and uses outbuildings, fruit trees and a garden thereon, cultivates a part thereof, and grazes the whole, and whose dominion over the land is notorious and is recognized and respected by all the countryside, has adverse possession of the whole tract.

2. ADVERSE POSSESSION—*Purchase of Adjoining Tract—Possession Extended.*—Where a party in possession of a tract of land purchases an adjoining tract which is vacant or not in the adverse possession of another, and grazes it and has the timber cleared off it, he will be considered as in the possession of the newly acquired tract.

3. ADVERSE POSSESSION—*Coparcener Claiming Sole Seisin.*—As against a third person, the possession of one coparcener is the possession of all, although such coparcener claim to be solely seised.

4. TAX DEEDS—*Omitting Statutory Recitals—Invalid Deed.*—The omission from a tax deed of the recitals required by the statute, such as that the treasurer made a report of sale and that it was confirmed, is fatal to the validity of the deed. The statute requires that the deed shall set forth all the circumstances appearing in the clerk's office in relation to the sale. If there was a report of a sale and it was confirmed, these facts would appear in the clerk's office and should be recited, as they are important particulars relating to the sale.

Appeal from a decree of the Circuit Court of Rockingham county. Decree for the defendant. Complainant appeals.

*Affirmed.*

The opinion states the case.

*John E. Roller* and *McCormick & Smith,* for the appellant.

*E. D. Ott,* for the appellee.

HARRISON, J., delivered the opinion of the court.

This controversy involves the title to two small adjoining tracts of land containing in the aggregate about one hundred and forty-five acres. A careful consideration of the record satisfies us that the appellant has failed to establish the claim asserted by him to the land, and that the appellee has very clearly shown, assuming that his title was not otherwise perfect, that he has acquired a good title to the land by reason of the adversary possession of himself and those under whom he claims for more than the statutory period.

In deciding the case the learned judge of the circuit court delivered the following opinion, which is filed with and made a part of the record:

"This suit, while in form to quiet title by a plaintiff claiming to be in possession of the land in dispute, is in fact a suit to try title and recover possession from an adverse claimant in possession, and this court has retained jurisdiction, with some misgivings, under the provisions of the act of February 20, 1912 (Acts 1912, p. 76), amending section 3058 of the Code.

"The plaintiff asserts title to a tract of 445 acres of land, which he claims includes the parcels in controversy in this suit. He claims by two chains of title which are distinct and conflicting for a long period of time, but go back to a common source in the Shipman and Waterman grant from the Commonwealth for 445 acres in 1801.

"The plaintiff's first claim originated in a purchase at a tax sale in 1886, the deed from the clerk made in pursuance of this sale bearing date December 28, 1889. The plaintiff has claimed the property and paid taxes on it from the time of his purchase at the tax sale in 1886 forward, but he does not claim to have entered into actual possession of any part of the 445 acres, either by himself or by an agent, until some fifteen or twenty years later.

"The plaintiff's second title arises under two deeds to himself, one made by Anna E. D. Gray and others, dated June 9,

1894, and the other made by W. H. Ruffner and wife, dated April 22, 1895. These are apparently quit-claim deeds, and they do not mention the 445-acre tract of land, but 'release and convey with special warranty' all the right, title and interest of the grantors to any and all lands in the county of Rockingham which were at any time owned by Augustus Waterman, deceased, and 'which under the will of said decedent were devised to A. S. Gray and others, the children of Robert Gray, deceased, the deed from W. H. Ruffner and wife excepting any and all interest in and to the lands conveyed to one Charles Lennig by deed of record.

"The land in controversy in this case consists of two adjoining tracts, one of ninety-three acres known as the Airey tract, and another tract of fifty-two acres known as the Fawscett tract. The defendant does not claim under the Shipman and Waterman patent. He claims the fifty-two-acre tract under conveyances going back to a grant from the Commonwealth to Charles Fawscett in 1832, but his title to the ninety-three-acre tract is not traced back to the Commonwealth. He defends his title to both tracts by adversary possession in himself and his ancestors in title for more than the period fixed by law. As to the ninety-three-acre tract at least, he has established his right by adversary possession, and I think he has as to the Fawscett tract also.

"Without going back beyond the purchase of the Airey tract by Amanda Airey in 1876, when it was sold at the suit of a creditor as the property of Madison Airey, the husband of Amanda Airey, in the suit of *Jacob Flook's Admr.* v. *Madison Airey,* it appears that Amanda Airey herself, one of the predecessors in title of the defendant, held adverse possession under her said purchase and the deed made by Patterson, commissioner, to her in 1878 in that cause, for more than fifteen years. She died in September, 1896, and a couple of years before she died she moved off the land a short distance, but continued to work her garden at her old home and to look after the property. From 1876 to 1896 only is twenty years, five years more than the statutory period, and the witnesses, nearly or quite all, say

that Amanda moved from the land only a short time, or a couple of years, before she died. The possession of Amanda Airey fully meets the requirements of the law. She lived in a dwelling house on the land, and had outbuildings and fruit trees, a garden, and some parcels cultivated in corn and potatoes. Portions of the land were cleared and fenced, and the whole was grazed, and there was a reasonably good fence, originally of rails and more lately of rails and brush, nearly all the way around it, or, rather, where they adjoined, and the Fawscett tract was the exterior tract, around the Airey and Fawscett tracts together. She held dominion over the land and the dominion was notorious, and it was recognized and respected by all the countryside. Such possession as she held is all that the law requires for adverse possession. *Merryman* v. *Hoover,* 107 Va. 485, 491-2, 59 S. E. 483, Instructions Nos. 4 and 5, given for defendant and approved on appeal; *Lennig* v. *White,* 1 Va. Dec. 873, 20 S. E. 831, and cases cited.

"The deed from Patterson, commissioner, to Amanda Airey does not describe the land by metes and bounds, but I think it is shown that the tract was well enough known by name and boundaries to identify it; indeed, these boundaries were located and platted by J. Hawse, county surveyor, when he made the survey for General Roller in 1889 after his purchase at the tax sale in the name of W. H. Tams & Co., and it was again surveyed when it was sold to Madison Wise and conveyed to him by John T. Harris, commissioner, in the suit of *Derror* v. *Templeman,* a suit for the partition of the estate of Amanda Airey.

"As to the Fawscett tract of fifty-two acres patented to Charles Fawscett in 1832, it does not appear that this tract was occupied by residence on it. It was grazed as the Airey tract was, and the timber was cleared off in places. Amanda Airey was one of the children and heirs at law of Charles Fawscett, the patentee. Her brother, George Fawscett, another child and heir of Charles Fawscett, had possession or control of the land for awhile and then turned it over to Amanda Airey, who, ac-

cording to Catherine Fawscett, widow of George, had possession of it as long as forty years. This tract adjoined the Airey tract, and the possession by Amanda Airey of the Airey tract extended to the Fawscett tract and constituted possession of that also. The possession of one tract extends in law to an adjoining tract held under color of title by the same person.

"In the case of *Simmers Creek Coal Co.* v. *Doran,* 142 U. S. 417, 12 Sup. Ct. 239; .35 L. Ed. 1063, the Supreme Court of the United States said: 'Where a party purchases land adjoining a tract of which he is already in the occupancy, he will be considered as at once, in point of law, in the possession of the newly-acquired tract when the latter is vacant, or at least not held under an adverse possession.' See, also, *Overton* v. *Davisson,* 1 Gratt. (42 Va.) 211, 42 Am. Dec. 544; *Merryman* v. *Hoover, supra,* the last sentence of Instruction No. 5 given for defendant and approved by the court.

"The fact that Amanda Airey was only one of several heirs of Charles Fawscett, deceased, would not, in my opinion, operate against the application of this rule, especially when acts of ownership were exercised on and over the property. Her possession would inure, of course, to the benefit of the co-heirs, but it was in her own right that she was in possession and it inured to her own benefit also.

"It is the conclusion of the court that the title of defendant, as to both tracts of land, is good by the adversary possession of his ancestors in title, under color and claims of title, for more than the statutory period.

"Looking further, however, to the title of the plaintiff, we find that fatally defective as to his first chain of title, and probably also as to his second title—certainly defective, if not fatally so.

*     *     *     *     *     *     *     *     *     *     *     *

"The tax title is fatally defective in the omission from the two tax deeds, the one from Messerley, clerk, to John E. Roller,

and the one from Erasmus Coffman, clerk, to W. H. Tams and others, of recitals essential to the validity of the deeds under the law. Section 655 of the Code, which was in force at the time the deed from Messerley, clerk, to Roller was made, requires that the deed shall set forth all the circumstances appearing in the clerk's office in relation to the sale. The deed from Messerley, clerk, does not recite that the treasurer made a report of sales or that the same was confirmed by the court. Both of these things were required and both are circumstances which, if they occurred, appear in the clerk's office, and they are important particulars relating to the sale. It was decided by the Supreme Court of Appeals in *Coles* v. *Jamerson,* 112 Va. 311, 71 S. E. 618, 50 L. R. A. (N. S.) 407, that the omission of these recitals from the tax deed was fatal to its validity. See also Minor on Tax Titles, pp. 118, 119.

"The same defect exists in the deed from Erasmus Coffman, clerk, to Thomas Masford, W. H. Tams and others, of April 28, 1848. This deed makes no mention of any report *of sales to the court,* or *of any order or action of the court on such a report.* It refers to a report returned to the clerk's office, but not to any report made to the court or to any action of the court.

"Section 16 of Ch. 37 of the Code of 1849 (p. 203) provides, as the present statute does, that the deed 'shall set forth all the circumstances appearing in the clerk's office in relation to the sale,' and section 11 (p. 202) requires the list of sales to be reported under oath to the court by the sheriff, and that the court, if it sees no ground to doubt the correctness of the list, shall order a copy thereof to be certified to the first auditor. It was also provided by an act of Assembly of 1845-6 (Acts 1845-6, p. 14, sec. 6), in force at the time of the revisal of 1849, that no clerk of any county in the Commonwealth should make a deed for land sold, or which might thereafter be sold, for the non-payments of taxes, unless such deed should specify the metes and bounds of the land it purported to convey

and the names of the owners of the adjoining tracts, and such further description as might identify the land. This act appears in the Code of 1849 as section 15 of Ch. 37 (p. 203), where it is provided as follows:

" 'When also an entire tract of land is sold, and not redeemed within the said two years, the purchaser, his heirs or assigns, at his or their expense, shall have a report made by the surveyor of the county to the court thereof, specifying the metes and bounds of the land sold and the names of the owners of the adjoining tracts, and giving such further description of the land sold as will identify the same, and the county court, unless it sees some objection to such report, shall order the same to be recorded;" and by section 16, on the same page, it is provided, referring to the section first quoted, 'and if the sale be of an entire tract of land, it' (that is, the deed) 'shall refer to the report made according to the fifteenth section and the order thereupon.' The act of 1845-6, requiring the deed itself to specify the metes and bounds and the names of the adjoining owners and not merely that it should refer to the report and the action of the court on it, as provided by the Code of 1869, appears to have been in force in 1848 when this deed of Coffman, clerk, was made, but that deed neither described the land by metes and bounds and the names of adjoining owners, as was required by that act, nor does it refer to the report of a surveyor or the action of the court upon such a report as required by section 16 of Ch. 37 of the Code of 1849. Under the authority of *Coles* v. *Jameson, supra,* and of Mr. Raleigh Minor, in his work on Tax Titles, at p. 17 *et seq.,* the two tax deeds relied on by the plaintiff must be held to be invalid and ineffectual to pass the title they purported to pass. The plaintiff fails, therefore, to trace his title to Stephen Gold, to whom, according to his claim, the 445-acre Shipman and Waterman tract was conveyed.

"If this land was conveyed by Asher Waterman to Stephen Gold, as claimed by General Roller and indicated by his evi-

dence, then, of course, no title passed under the will of Asher Waterman or by any of the conveyances through which the plaintiff claims his second line of title.

"The records of Rockingham county were destroyed by Federal troops during the war, and neither the original nor a copy of the deed to Gold has been produced. The evidence of the plaintiff, however, shows that the fee book of the clerk of the court contains a charge in 1811 for recording a deed from Asher Waterman to Stephen Gold, and that the land book shows a transfer of the 445-acre tract to Gold. It also appears that the land was assessed for taxes in the name of Gold and was sold as delinquent in his name in 1846. The will of Asher Waterman, dated in 1827, is an exhibit in this case, and this will has appended to it a schedule of the testator's property in which the 445-acre tract does not appear, neither is it mentioned in the will. Furthermore, from the time of the supposed conveyance to Gold down to the bringing of this suit, it does not appear that this tract of land ever stood on the land books or was assessed with taxes in the name of Asher Waterman or of any one claiming through his will, nor does it appear that, after the time of the supposed conveyance to Gold, Asher Waterman or any one claiming under his will ever exercised ownership or authority over the land or claimed it in any way, and in neither of the wills and in none of the conveyances, from Asher Waterman down, through which the plaintiff claims by his second line of title, is this tract of land mentioned by name or description. The schedule to the will of Asher Waterman does not mention 700 acres situated near Smith's creek, on the west side of the 'pequet' mountain, but the deed from J. Shipman to Asher Waterman shows the conveyance of Shipman's interest in another tract (besides the 445-acre tract) and a larger one, lying between Smith's creek and the mountain, and the 700-acre tract mentioned in the schedule to Asher Waterman's will is much more likely to be the remnant of that larger tract

than it is to be the 445-acre tract. The 445-acre tract now surveys 447 acres, according to the survey of J. Hawse, county surveyor, made at the time of General Roller's purchase at the tax sale, and it was sold as delinquent in the name of Gold as 447 acres. The schedule to Asher Waterman's will mentions that some of the mountain lands have been sold and makes reference to deeds of record for the identification of such parcels. It does not appear from any of the papers that the 445-acre tract adjoined any other land owned by Shipman and Waterman or by Waterman. The evidence is strongly persuasive of the execution of a deed by Asher Waterman to Gold for this land, and the court is disposed to think it is sufficient for that purpose, especially as against the conflicting title of the plaintiff here who put in the evidence and claims title through the supposed deed.

"This second line of title claimed by the plaintiff is defective in part in other particulars. If the property passed at all by Asher Waterman's will, it passed by the 5th clause of the will. That is a residuary clause, and the beneficiaries of it are designated by description as the five children of the testator, and not by name, except as to one of them named Albert. The language of that clause is: 'The balance of my property is to be sold or rented or divided as my executor may think proper between my five children, so as to make them or their heirs equal, except Albert,' etc. The 3d clause of the will makes a devise to Augustus Waterman, but his relationship to the testator is not indicated. Taking this will, however, in connection with the will of Augustus Waterman, a later link in this title, and it appears with reasonable certainty from the expressions and recitals of these two wills that Augustus Waterman, Albert G. Waterman and Isabella Gray, wife of Robert Gray, were three of the five children of Asher Waterman, who were the beneficiaries of the residuary clause of Asher Waterman's will, but the two remaining children are not identified by any evidence in the case. The next link in

this chain of title is a deed of June 8, 1827, from Robert Gray and Isabella, his wife, John Gray and Harriet, his wife, Charles Douglas and Ann, his wife, and Albert G. Waterman, parties of the first part, to Augustus Waterman. This deed conveys all the 'interest, claim and right' of the grantors in and to all the real estate of which Asher Waterman died seized in the county of Rockingham with the exception of the  . . . on Muddy creek and one hundred acres more or less distant . . . one mile from said farm and joining the lands of Cokley and Arnold and  . . .  less the real estate specifically devised by the said Asher Waterman to the  . . . .' This deed was copied from the burnt records and the blank spaces indicate the parts that were destroyed. The deed contains no recital showing the relationship of the grantors to Asher Waterman and does not identify them as the children referred to in the 5th clause of his will. Any title that passed by Asher Waterman's will fails therefore, at this point, as to two-fifths of it.

"The next link in this line of title is the will of Augustus Waterman, dated December 11, 1855, and probated at February court, 1858. If the 445-acre Shipman and Waterman tract passes by this will it passes by the clause by which the testator devised to (1) Alg. S. Gray, (2) Charles D. Gray, (3) Henry J. Gray, (4) Robert A. Gray and (5) Wm. H. Ruffner and Harriet, his wife, all his 'right, title and interest to the mountain tract of land in the counties of Rockingham, Pendelton and Hardy (if there be any in this last county).' The heirs of A. S. Gray, one of the devisees, and the heirs of C. D. Gray, another of these devisees, by deed of May 1, 1894, admitted to record November 2, 1897, conveyed to the widow and heirs of H. J. Gray, another of said devisees, "all the interest held by said A. S. Gray and C. D. Gray on the 20th day of January, 1874, in any and all lands wherever situate conveyed to the children of Robert Gray, deceased, by Augustus

Waterman in his lifetime, or devised to them in his last will and testament.' By deed of June 9, 1894, admitted to record November 2, 1897, Anne E. D. Gray and others, the widow and heirs of Henry J. Gray, deceased, released and conveyed with special warranty to John E. Roller 'all their right, title and interest in and to any and all lands in the county of Rockingham, State of Virginia, which were at any time owned by Augustus Waterman, deceased, and which under the will of said decedent were devised to A. S. Gray and others, the children of Robert Gray, deceased, including the interests conveyed to said grantors by the heirs of A. S. Gray, deceased, by deed dated the 1st day of May, 1894, to be recorded before this deed is recorded.' By a similar deed, dated April 22, 1895, and recorded November 2, 1897, W. H. Ruffner and wife conveyed their interest in the Waterman lands to the plaintiff.

"These three deeds make no mention of the 445-acre tract of land in question, and are in the nature of quit-claim deeds to the Waterman lands generally, by which the plaintiff sought to protect his tax title to the 445-acre tract, or claims to other Waterman lands, from attack by the Waterman heirs or devisees.

"The deed from Ruffner and wife, as well as the deed from Anna E. D. Gray and others, to the plaintiff, show by their recitals that the A. S. Gray, C. D. Gray, H. J. Gray, Robert A. Gray and Harriet Ruffner, devisees under the will of Augustus Waterman, were children of Robert Gray, deceased. No deed has been made by Robert A. Gray, one of these five devisees under the will of Augustus Waterman, and one of the children of Robert Gray, or by his heirs to the plaintiff. There is a failure here then, of one-fifth of any title that passed by the will of Augustus Waterman, which with the failure of two-fifths in the hands of Augustus Waterman, previously mentioned, of any title that passed by will of Asher Waterman,

makes a failure of thirteen-twenty-fifths of the title, even if it be considered that Asher Waterman, deceased, the owner of the 445-acre tract, had devised it by the 5th clause of his will.

"On the whole case, the court is of opinion that the plaintiff has failed to establish a right to the land in controversy, and a decree may be drawn accordingly."

This opinion, which we adopt as the opinion of this court, fully and clearly expresses our views of the case presented by this appeal: and for the reasons therein given we are of opinion that there is no error in the decree complained of, which is affirmed.

*Affirmed.*