# Staunton

## THE W. M. RITTER LUMBER COMPANY v. EARSEL C. EDWARDS.

September 9, 1938.

Present, All the Justices.

The opinion states the case.

*W. L. Rush* and *Burns & Lively,* for the plaintiff in error.

*S. H. & Geo. C. Sutherland,* for the defendant in error.

CAMPBELL, C. J., delivered the opinion of the court.

This is an action at law brought by the plaintiff, Earsel C. Edwards, against the defendants, The W. M. Ritter Lumber Company, to recover damages by reason of an alleged trespass by the defendant upon real estate claimed by the plaintiff. There was a verdict and judgment for the plaintiff in the sum of $1,500, and thereupon the defendant obtained this writ of error. The primary and determinative question in the case is the ownership of the land in controversy.

The plaintiff is the grandson of one Tivis Colley and Elvina Colley and the son of Iowa Edwards and B. H. Edwards.

On April 9, 1895, one Sarah Rose conveyed to Tivis Colley a boundary of land lying and being in Dickenson county, containing one hundred and forty-two acres more or less and bounded as follows:

"BEGINNING on the Short branch a corner to Jasper Artrip, thence up said branch with his lines to the top of the hill to a maple and white oak, then with a condition made by M. T. Lipps and Sarah Rose to Bear Tree Branch and with the meanders of said branch to the line claimed by John Bartley if he should have any land adjoining said land (if not to the Pound river), thence a straight western direction up said Pound river to the beginning."

In the year 1921, Elvina Colley, the widow of Tivis Colley, conveyed a portion of the land conveyed by Sarah Rose to Iowa Edwards and others. In 1933, Iowa Edwards and others conveyed this land to the plaintiff. In addition to the claim under his claim of title, plaintiff claims the land by adverse possession.

The claim of the defendant to the land involved and the rights asserted by it rest upon the following muniments of title:

"(1) A grant from the Commonwealth of Virginia, dated November 26, 1890, to E. S. Finney and Jacob Baldwin;

"(2) A deed from Jacob Baldwin and wife to E. S. Finney, conveying Baldwin's undivided one-half interest in said grant to said Finney, dated August 17th, 1893;

"(3) A deed from E. S. Finney and wife dated September 16th, 1905, to Clinchfield Coal Company;

"(4) A deed from Clinchfield Coal Co., dated June 4th, 1906, conveying to Clinchfield Coal Corporation, numerous tracts, including the Finney-Baldwin grant;

"(5) A deed from Clinchfield Coal Corporation, dated January 15th, 1915, to defendant, W. M. Ritter Lumber Company, conveying the timber and easements claimed and exercised by defendant, upon the lands in controversy and numerous other tracts of land."

The contention of defendant that the burden is upon the plaintiff to show that he has legal title to the land in controversy, or that his claim of adversary possession under color of title has ripened into a complete title under the statute, is well founded. *Craig-Giles Iron Co.* v. *Wickline,* 126 Va. 223, 228, 101 S. E. 225. It is also true that the burden is upon the plaintiff to identify and to locate the land which he claims, and to show that the same is embraced within the designated boundaries of his title papers.

In the view we have of the case, it is unnecessary to consider the contention of defendant that the deed of Sarah Rose to Tivis Colley, *supra,* fails to convey to the grantee the land in question. The learned trial court held, and we think correctly, that the aforesaid deed was sufficient upon which to base a claim of color of title. This being true, we are to determine whether or not the plaintiff has successfully borne the remaining burden.

In *Merryman* v. *Hoover,* 107 Va. 485, 59 S. E. 483, Judge Keith approved this instruction defining the doctrine of adverse possession:

"The jury are instructed that in order to constitute adverse possession, it is not necessary that the land should be enclosed or built upon, but the entry by the defendant and those under whom he claims, must have been made under a claim of title with the intention of taking possession, and be accompanied with such visible, actual, adverse, continuous and exclusive acts of ownership as from their nature indicate a notorious claim to and possession of the property, and if they believe from the evidence that the defendant and those through whom he claims, took possession under a claim of title of the land in controversy, and have continuously for the period of fifteen years before the commencement of this action, exercised such actual, hostile, visible and exclusive acts of ownership over the lands as, from their na-

ture, indicated a notorious claim to and possession of the property, they must find for the defendant."

The evidence adduced by the plaintiff conclusively shows that Sarah Rose and those under whom she claimed had been in possession of a large boundary of land for approximately ninety years and that on April 9, 1895, she conveyed a portion thereof to Tivis Colley; that Colley was then living on a tract of land adjoining this land and farmed the same until his death in 1893, and thereafter his widow and children enlarged the clearing and cultivated it until the conveyance to plaintiff in the year 1933. It was also shown that defendant, by its predecessor in title, allegedly recognized the claim of plaintiff by purchasing from him a portion of the land. The record also shows that plaintiff and his predecessors in title claimed the boundary extending from Short branch to Pound river, cultivated same, cut timber from it for sale and for farm purposes, built roads upon it and operated a small coal mine thereon. It also appears that in 1933 defendant and Clinchfield Coal Corporation filed their bill against plaintiff and others, claiming title to the land in controversy and the right to remove timber therefrom and to erect tramroads thereon; the bill further alleged that the defendants "with force and arms" prevented the assertion of complainant's rights to said land, et cetera, and in conclusion, prayed that defendants be enjoined from further trespass. The lower court granted the injunction but upon an appeal to this court, the judgment was reversed. The basis of this court's holding is thus stated:

"Our conclusion is that complainants have failed to show that the lands in controversy are covered by the grants and other instruments in writing introduced in evidence, and therefore, for that reason, it was error for the chancellor to decree a permanent injunction in this case. However, in view of the facts that the record does not disclose that a survey of the land in dispute has ever been had, and in view of the further fact that complain-

ants based their identification of the land upon the mistaken view that the evidence of Tyler and French was conclusive of the question, we do not think there should be an adjudication of the question of title in this suit. Therefore, the decree will be reversed and annulled, without prejudice to the rights of any of the parties interested to assert title to the property if they be so advised."

No further action was ever taken by complainants. It was, however, during the pendency of that suit, and while the injunction granted was effective, that the alleged wrongs complained of in this action were committed.

In overruling the motion of defendant to strike the evidence of plaintiff, the trial court stated that in its opinion the evidence was sufficient to carry the case to the jury. In conformity with that view, the court gave the following instructions which epitomize the case made by the plaintiff on the question of adverse possession.

No. 8. "The court tells the jury that the north line of the deed from Sarah Ann Rose to Tivis Colley, in 1895, runs to the Pound River, unless John A. Bartley owned land on that side of the River, where Skeetrock Branch is; and if you should believe from the evidence in this case that Sarah Ann Rose cut and removed the poplar timber along and down to Pound River from Skeetrock Branch up to Short Branch and placed the same into the River, and floated it out to Kentucky, without objection from John A. Bartley, or anybody claiming under him, and after she deeded her land to Colley in 1895, he claimed down to the river, and made a clearing on the edge of same; and after his death in 1908, his daughter in 1909 or 1910, moved down on the bank of the river, where she and her husband built them a home, cleared them a farm, and cultivated same, and they or someone by their authority, continued thereafter continuously to occupy and farm the same without molestation or objection then you may infer Bartley had no land between the River and hers."

No. 9. "The Court instructs the jury that the deed from Sarah Ann Rose to Tivis Colley in 1895 runs down to the Pound River at the mouth of Skeetrock Branch and if you should believe from a preponderance of the evidence in this case that after said deed was made the said Tivis Colley claimed thereunder down to the River, and made a clearing on the edge thereof before his death, honestly claiming the same was within his deed, and after his death, which happened in 1908, his daughter in 1909 or 1910, moved down on the river at said clearing where she and her husband built them a home, cleared them a farm, and cultivated the same, and they or someone by their authority, continued thereafter continuously to occupy and claimed said farm, without objection, and that a straight line from the mouth of Skeetrock branch to the beginning corner would leave said farm outside the boundaries of said deed, and would cross Pound River twice and include land on the south side thereof belonging to others, then the boundaries of said deed from the Skeetrock Branch to the beginning corner is up Pound River and not a straight line from Skeetrock Branch to the beginning corner."

No. 11. "The Court tells the jury that if you believe from a preponderance of the evidence in this case, that the land to the Pound River, between Skeetrock and Short Branches, was included in the deed from Sarah Rose to Tivis Colley, in 1895, as set forth in the instructions above, and that he thereafter entered thereon, cleared, fenced, cultivated and farmed any part thereof, claiming to the extent of the boundaries in his deed, then his possession and clearing on a part thereof was possession to the extent of his boundaries as much as the portions actually enclosed and farmed, if no one else was in possession of any part thereof, and even if he did not obtain title by the deed to him from Sarah Rose, ten years of open, exclusive, continuous, notorious, adverse possession invested him with complete legal title to each and every part of the land embraced in his deed, and

he or his heirs could recover by reason of this title from any person thereafter entering thereon even though they had a grant from the Commonwealth, or their predecessor in title had a grant from the Commonwealth, to which they connect with a regular chain of title."

No. 12-a. "The Court instructs the jury that even if the land in controversy is included in the grant to Finney and Baldwin, dated 1890, but Finney and Baldwin, nor any one claiming under them ever had possession of any part of the land embraced in said grant; and even if you should further believe that the land in controversy is not included in the deed from Sarah A. Rose to Tivis Colley, in 1895, but was claimed by him under said deed, and by reason thereof before his death he made a clearing on Pound River outside of the land in controversy, and after the death of said Tivis Colley, his daughter, Iowa Edwards and her husband, moved upon said clearing and enlarged same, and farmed said clearing openly, notoriously and continuously, until in 1919, claiming their said farm and enclosure was embraced in their father's lands; that in the year 1919 the heirs of Tivis Colley still claiming the lands in controversy had descended to them as his heirs and for that reason surveyed the portion afterwards embraced in the deed from their mother to them as a part of their inheritance, and divided the residue among themselves, and Chloe Ratliff, Estelle Willis and Fitzhugh Colley, made the said Iowa Edwards a deed to a tract of Fitzhugh, and which adjoined the two tracts in controversy, and which included her fenced farm on Pound River, where her father had cleared before his death, and she thereafter continued to live on and farm any part of the lands embraced in her deed from her brother and sisters, until May 5, 1921, on which date her mother made to her children, including the said Iowa Edwards, a deed to the lands in controversy, or a part thereof, which adjoins the lands embraced in the deed from Chloe Ratliff, Estelle Willis and Fitzhugh Colley, in 1919, to Iowa Edwards; and that Iowa Edwards, or

some tenant, or person by her authority continued in possession of her said farm down to the Pound River claiming same, cultivating and farming it, and living thereon each and every year thereafter until 1933, claiming to the extent of her deed as her own, and the portion included in the deed from her mother to her and her brother and sisters, dated May 5, 1921, as belonging to them jointly, and paid the taxes thereon during said period, and on January 16, 1933, said Iowa Edwards, Chloe Ratliff, Estelle Willis and Fitzhugh Colley conveyed by a deed in which their respective husbands and wife joined, which included the lands in controversy to the plaintiff, he thereby acquired title to each and every part of the land embraced and included in the deed from Elvina Colley to her children, dated May 5, 1921; and, if the defendant thereafter, while claiming under the Finney grant or otherwise, and with a chain of conveyance which regularly connected it therewith, entered on same, cut and removed the timber therefrom, built, maintained and used tramroads and other roads on same, then it is your duty to find for the plaintiff such damages as the evidence shows he has sustained thereby."

In our opinion the instructions correctly state the law applicable to the facts of the case.

In the petition for writ of error defendant assigns numerous errors. Upon a careful consideration of the assignments of error, we conclude that they are without merit.

The judgment of the circuit court is, therefore, affirmed.

*Affirmed.*