LESSEE OF JAMES H. EWING, PLAINTIFF IN ERROR V. JACOB BURNET.

Ejectment. Ohio. It is the exclusive province of the jury to decide what facts are proved by competent evidence. It is their province to judge of the weight of testimony as tending, in a greater or less degree, to prove the facts relied upon.

An elder legal title to a lot of ground gives a right of possession, as well as the legal seizure and possession thereof, co-extensive with the right; which continues until there shall be an ouster by actual adverse possession, or the right of possession becomes in some other way barred.

An entry by one on the land of another, is or is not an ouster of the legal possession arising from the title, according to the intention with which it is done. If made under claim or colour of right, it is an ouster; otherwise it is a mere trespass. In legal language the intention guides the entry, and fixes its character.

It is well settled that to constitute an adverse possession there need not be a fence, a building, or other improvement made; it suffices for this purpose that visible notorious acts are exercised over the premises in controversy, for twenty-one years, after an entry under a claim and colour of title.

Where acts of ownership have been done upon land, which from their nature indicate a notorious claim of property in it, and are continued for twenty-one years with the knowledge of an adverse claimant, without interruption or an adverse entry by him for twenty-one years; such acts are evidence of an ouster of the former owner, and of an actual adverse possession against him; if the jury shall think that the property was not susceptible of a more strict and definite possession than had been so taken and held. Neither actual occupation or cultivation are necessary to constitute actual possession, when the property is so situated as not to admit of any permanent useful improvement; and the continued claim of the party has been evidenced by public acts of ownership, such as he would exercise over property which he claimed in his own right, and could not exercise over property which he did not claim.

Punctuation is a most fallible standard by which to interpret a writing; it may be resorted to when all other means fail: but the Court will first take the instrument by its four corners, in order to ascertain its true meaning. If that is apparent on judicially inspecting it, the punctuation will not be suffered to change it.

An adverse possession for twenty-one years under claim or colour of title merely void, is a bar to a recovery under an elder title by deed; although the adverse holder may have had notice of the deed.

IN error from the circuit court of the district of Ohio.

The plaintiff in error instituted an action of ejectment in the circuit court of Ohio, at December term, 1834, against the defendant, to recover a lot of ground in the city of Cincinnati. Both the plaintiff and the defendant claimed title under deeds from John Cleves

Symmes, the original grantee of the United States, for all the land on which the city of Cincinnati is erected. The deed from Symmes, under which the plaintiff asserted his title, was executed June. 11th, 1798, to Samuel Forman; the deed from Symmes to the defendant, for the same lot, was dated May 21, 1803. An adverse possession for twenty-one years, and upwards, was relied on, as constituting a sufficient legal title, under the statute of limitations of Ohio. The case, and the evidence, are fully stated in the opinion of the court.

The cause was tried at July term, 1835, and a verdict under the instructions of the court, was found for the defendant, on which a judgment was rendered. The plaintiff tendered a bill of exceptions.

The charge of the court was as follows:—

The plaintiff having shown a deed for the premises in controversy older in date than that which was given in evidence by the defendant, on the prayer of the defendant, the court. nstructed the jury that his actual possession of the lot, to protect his title under the statute of limitations, must have been twenty-one years before the commencement of this suit. That suing for trespass on the lot, paying the taxes, and speaking publicly of his claim, were not sufficient to constitute an adverse possession. That any possession short of an exclusive appropriation of the property by an actual occupancy of it, so as to give notice to the public and all concerned, that he not only claimed the lot, but enjoyed the profits arising out of it, was such an adverse possession as the statute requires. That to constitute an adverse possession it is not essential that the property should be enclosed by a fence, or have a dwelling house upon it. If it were so situated as to admit of cultivation as a garden, or for any other purpose without an enclosure, and it was so cultivated by the defendant during the above period, it would be sufficient; or if the lot contained a coal mine, or marble or stone quarry, and it was worked the above period by the defendant, he having entered under a deed for the whole lot, such an occupancy would be an adverse possession, though the lot had no dwelling house upon it, and was not enclosed by a fence. And also, if the lot contained a valuable sand bank which was exclusively possessed and used by the defendant for his own benefit, by using the sand himself and selling it to others, and his occupancy of the lot in this manner was notorious to the public and all concerned; and if the defendant paid the taxes for the same, ejected and prosecuted trespasses on the lot, it being situ-

[Ewing v. Burnet.]

ated adjoining to the lots on which the defendant actually resided, except the intervention of a street which had not been graduated and opened so as to be used by the public; and said lot preserved the view of the defendant from his residence unobstructed, and such possession was continued the time required by the statute, it would constitute an adverse possession for the whole lot, the defendant having entered under a deed as aforesaid. The court also said to the jury the law had been settled in Kentucky, that if a person residing on a tract of land should purchase by deed another tract adjoining to it, his possession would not be extended over the tract thus purchased; and that this seemed to be reasonable, and was sustained by the doctrines of possession as generally recognised. That had the lot in controversy adjoined the premises on which the defendant resided, the case would come within the rule; but that a street intervened between the residence of the defendant and the lot in controversy, which would prevent an application of the rule.

Mr. Storer, for the plaintiff in error, contended that the circuit court had erred, in charging the jury that the evidence adduced by the defendant established an adverse possession of the lot of ground in controversy, for twenty-one years.

2. That a part of the charge was erroneous in having laid down law as applicable to a supposititious and different case, and in so stating it as that it was applied, by the jury, to the case on trial.

The substance of all the testimony is this: The defendant, Jacob Burnet, claimed to be the owner of the lot under a deed dated in 1804. He has occasionally driven persons away from the lot, and prevented sand-diggers from carrying off sand. In 1820 he leased the privilege of digging sand. No fence was ever built around the lot, but, on the contrary, the lot was laid open as a common, and was passed over daily by the witnesses. Mr. Burnet has his residence on the opposite side of the street, and his own lot, opposite to this, on which was his dwelling, was fenced in. He has paid taxes on the lot since 1810, and has once or twice brought suit against persons for trespassing on the lot; and has always claimed it as his own.

If these facts constitute an adverse possession, then the judgment is right. The evidence being all before the court, in the bill of exceptions, whether they constitute or amount to an adverse possession, is a question of law. " Adverse possession is a legal idea;

admits of a legal definition of legal distinctions; and is, therefore, correctly laid down to be a question of law." Bradstreet v. Huntington. 5 Peters' Rep. 438.

In the absence of proof of any actual possession of the premises in controversy, the law presumes a possession in the person having the legal title: as the plaintiff's lessor shows the elder title in this case, and the law having attached to that title a constructive possession, the proof of an actual adverse possession is cast upon the defendant. The law raises no presumptions against the elder title; it will not presume that any thing has been done: hence the defendant must show, beyond any reasonable doubt, first, that there has been an adverse possession; second, that adverse possession has continued for at least twenty-one years. 8 Cranch, 250; 5 Peters, 355; 3 Wendall, 152; 4 Mass. 417; 3 Johns. Ca. 124; 10 Serg. & Rawle, 305.

First. There must, then, have been an adverse possession; and here the inquiry will be what constitutes such a possession, so as to create a bar to the recovery of the true owner?

To constitute an ouster of him who was seised, the deprivor must have the actual exclusive occupation of the land, claiming to hold it against him who was seised, or he must actually turn him out of possession. 4 Mass. Rep. 418; 1 Mass. Rep. 486.

"Adverse possession must be marked by definite boundaries, and be regularly continued down, to render it availing." 9 Cowen, 654; 10 Johns. Rep. 477. "The act of limitation does not prevent the entry of the owner of the land, and bringing an ejectment at any time, unless when there has been an actual, continued, visible, notorious, distinct, and hostile possession for twenty-one years." 6 Serg. & Rawle, 23.

"Rights, barred by limitations, are where there is an actual, exclusive, adverse possession; definite, positive, and notorious; marked by definite boundaries; an uninterrupted and continued possession for twenty-one years." 3 Serg. & Rawle, 294; 1 Har. & Johnson, 545; 5 Har. & Johnson, 266. "The possession that will give a title, under the statute of limitations, must be an actual occupancy, *a pedis possessio*, definite, positive, and notorious." 2 Nott & M'Cord, 343.

"Digging a canal, and felling trees, are not such acts of possession as may be the basis of the prescription of thirty years." 12 Martin's Rep. 11; 9 Martin's Rep. 123; Appendix to Adams on Eject. 493.

[Ewing v Burnet.]

" The occasional exercise of dominion, by broken and unconnected acts of ownership, over property which may be made permanently productive, is in no respect calculated to assert to the world a claim of right; for such conduct bespeaks rather the fitful invasions of a conscious trespasser, than the confident claims of a rightful owner." 2 N. Car. Law. Rep. 400. "This title by possession, so as to defeat a grant or other legal conveyance, is never to be presumed, but must be actually proved and shown, in order to rebut a prior title, in the same manner and with the same degree of precision, as plaintiff must show a clear title in himself before he can recover." 2 Bay's Rep. 491.

" It is a settled rule that the doctrine of adverse possession is to be taken strictly, and not to be made out by inference, but by clear and positive proof. Every presumption is in favour of possession in subordination to the title of the true owner." 9 John. Rep. 167; 8 John. Rep. 228; 5 Pickering, 134-5; 3 John. Cases, 124; 1 Cowen, 285.

Again. There must not only have been an adverse possession, but such possession must have continued during the period of twenty-one years.

" This possession must not only continue, but it must continue the same in point of locality, during the prescribed period of time, sufficient to constitute it a bar; that is to say, a roving possession, from one part of a tract of land to another, cannot bar the right of entry of the owner upon any part of the land which had not been held adversely for twenty-one years." Hall's Law Journal, 255, 256. " The possession must have so continued that at any time an ejectment might have been brought against an occupant on the land, to try the right of entry." 3 A. K. Marshall's Ken. Rep. 366.

" If there is any period, during the twenty years, in which the person having the right of entry could not find an occupant on the land, on whom he could bring and sustain his ejectment, that period cannot be counted against him." Braxdale v. Speed; 3 A. K. Marshall's Rep. 366; 4 Bibb, 257; 1 A. K. Marshall's Rep. 106; Smith v. Mitchell; 1 A. K. Marshall's Rep. 208.

" An occasional use of the land, either by cutting down and taking away trees, digging or taking away stone or sand, or making sugar once a year, will not amount to an adverse possession." 1 A. K. Marshall's Rep. 106.

"In the case of Smith v. Mitchell, 1 Marshall, 208, the court

determined that the appellee, having occasionally, for upwards of twenty years, made sugar at a camp erected by him upon the land in contest, did not confer upon him such a possession as would bar the plaintiff's right of entry." 3 J. J. Marshall, 519.

Where the junior patentee, in such case, has neither *settled upon* nor *improved* the land, the senior patentee, in such " case has a right to consider each act of occupation as a mere temporary intrusion." 3 J. J. Marshall, 552.

Applying these cases to the cause before the court, it is believed that the evidence given by the defendant, on the trial, did not establish an adverse possession, and that the court ought so to have instructed the jury. Taking the whole evidence together, and drawing all the fair legal inferences from it, it is not proved that the defendant has been in the continued adverse possession of the lot in controversy for twenty-one years. There is nothing more than evidence of occasional acts of ownership over the property. If cutting down trees, making sugar, digging canals, &c., on the land, are not evidence of an actual adverse possession; how can the occasional drawing of a load of sand, or driving people away from the lot, be considered as more convincing evidence of an actual possession?

It is not contended, that, in order to constitute an actual adverse possession the lot must be enclosed by a fence; on the contrary, it is admitted that a fence is not actually necessary; it is merely evidence of the fact of occupancy; but it is the actual occupancy itself, connected with the claim of title that constitutes the bar. Land may be occupied without a fence; and we know that in some countries, thousands of acres of land are occupied and tilled although not under fence. In many parts of Europe, at this day, this is the case. But the fact of the land being occupied, and crops annually gathered, shows that an exclusive ownership is claimed by some one; and if it is not the true owner that is so using the land, it becomes him to assert his right in time. So it is willingly admitted that a lot may be so used and occupied for a period of years, without fencing, as to bar the right owner. For instance, a lot may be used for a coal or lumber-yard; the continually keeping such coal or lumber on the lot may as conclusively show an adverse holding, as though a fence was built around it. But because there may be such an adverse occupancy without fence, it does not follow that every pretence of ownership, or even a succession of trespasses in digging or permitting others to dig a load of sand on the lot, will constitute an adverse holding.

[Ewing v. Burnet.]

Admit the doctrine to the full extent, as contended for by the defendant, and it leads to this result, that any person may, by trespassing on his neighbour's lot or land occasionally, in the course of time become the owner of that land. Apply the same doctrine to wild land, and no man can safely own such property. Vacant lots in town are not usually enclosed, and so long as the public are permitted to pass over them, so long as they lie in common, it appears that it would be extremely dangerous to admit a title by adverse holding. If a man holding such property will rely upon a mere possession under a defective title, it is surely not requiring of him too much, (where no actual occupancy takes place,) in compelling him to erect his fence, thereby giving all the world to know that he claims, to the exclusion of all other owners. The decision made by this Court, in Ellicot and Pearl, 10 Peters, 414, since the trial of this cause, has been examined : the Court are not asked to interfere with that decision; nothing is found therein opposed to the present case. It is not contended that an occupancy of land can only be proved by the erection of a fence, or actual residence, or actual possession must be proved, without either fence or actual residence; and these are the positions decided in the cases alluded to. That case does not, therefore, affect the present controversy.

2. As to the second point, that the charge of the court was incorrect, in stating the law of a case different from that submitted to the jury, the judge said :—" If the defendant paid the taxes for the lot ejected, and prosecuted trespassers on the lot, it being situated adjoining to the lot on which the defendant actually resided, except the intervention of a street, which had  t been graded and opened so as to be useful to the public; and said lot preserved the view of the defendant from his residence unobstructed, and such possession was continued the time, &c., it would constitute an adverse possession."

This appears calculated to convey the impression to the jury, that the mere design on the part of the occupant of a house, on an adjoining lot, not in dispute, to preserve an unbroken view to his residence, may be considered as tending to establish an adverse possession of the lot in dispute. Surely, such a position cannot be sustained upon any sound principle of law. If once admitted, it would place all vacant town lots in the utmost jeopardy. Nothing is more common in towns, particularly of modern origin, than to have a house surrounded with vacant lots; and if an actual occupation, or an enclosure, can be dispensed with merely on the ground that the claim-

ant intended to preserve the view to a house on an adjoining lot, or a lot on the opposite side of the street; it is tantamount to establishing the proposition that neither actual occupancy, nor an enclosure, is necessary to constitute an adverse possession of a city lot.

The charge of the court, therefore, was entirely incorrect; and must have had an influence with the jury unfavourable to the plaintiff's rights.

Mr. Ewing for the defendant. The point presented by the counsel for the plaintiff in error, that the establishment of a subsequent title derived from the same source as the prior title, cannot affect the prior title, was not presented in the circuit court; and it cannot therefore be made a part of the case in this Court.

The whole question on the trial of the cause was the effect of the adverse possession asserted by the defendant, resting it on the statute of limitations of Ohio, upon the title of the plaintiff by deed, admitted to be prior in date to the deed under which the defendant also claimed.

Under the statute of limitations of Ohio, and under the general law, the circuit court had no right to exclude from the jury the evidence of possession. Some of the witnesses expressly say that the defendant had possession of the lot for upwards of twenty years; and thus the court had no right to weigh the evidence. It was not the duty of the court to say the evidence did not make out the case.

It is true, title by possession is a legal title; but facts must be proved to make it out. The court was bound to state what facts would make out such a title, and they did so.

Did the court lay down the law correctly in favour of the plaintiff and the defendant, in the charge to the jury? All the statements of the law are right, and the plaintiff has therefore no right to complain. It is said there cannot be two constructive possessions of the same property. This may be true; but the defendant does not claim a constructive possession, but an actual possession; and an ejectment might always have been brought against him by the plaintiff's lessee.

Mr. Storer in reply, insisted that asking a court to charge the jury whether the whole evidence was sufficient to establish an adverse possession, and asking instructions of the court on the whole evidence, are the same as a demurrer to evidence.

[Ewing v. Burnet.]

Mr. Justice BALDWIN delivered the opinion of the Court.

In the court below, this was an action of ejectment, brought in November, 1834, by the lessor of the plaintiff, to recover possession of lot No. 209, in the city of Cincinnati; the legal title to which is admitted to have been in John Cleves Symmes, under whom both parties claimed: the plaintiff, by a deed dated 11th of June, 1798, to Samuel Foreman, who, on the next day, conveyed to Samuel Williams, whose right, after his death, became vested in the plaintiff: the defendant claimed by a deed to himself, dated 21st of May, 1803, and an adverse possession of twenty-one years before the bringing of the suit. It was in evidence that the lot in controversy is situated on the corner of Third and Vine streets; fronting on the former one hundred and ninety-eight, on the latter ninety-eight feet; the part on Third street is level for a short distance, but descends towards the south along a steep bank, from forty to fifty feet, to its south line; the side of it was washed in gullies, over and around which the people of the place passed and repassed at pleasure. The bed of the lot was principally sand and gravel, with but little loam or soil; the lot was not fenced, nor had any building or improvement been erected or made upon it, until within a few years before suit brought; a fence could have been kept up on the level ground on the top of the hill on Third street, but not on its declivity, on account of the deep gullies washed in the bank; and its principal use and value was in the convenience of digging sand and gravel for the inhabitants. Third street separated this lot from the one on which the defendant resided from 1804, for many years, his mansion fronting on that street; he paid the taxes upon this lot from 1810, until 1834, inclusive; and from the date of the deed from Symmes, until the trial, claimed it as his own. During this time, he also claimed the exclusive right of digging and removing sand and gravel from the lot; giving permission to some, refusing it to others; he brought actions of trespass against those who had done it, and at different times made leases to different persons, for the purpose of taking sand and gravel therefrom, besides taking it for his own use, as he pleased. This had been done by others without his permission, but there was no evidence of his acquiescence in the claim of any person to take or remove the sand or gravel, or that he had ever intermitted his claim to the exclusive right of doing so; on the contrary, several witnesses testified to his continued assertion of right to the lot; their knowledge of his exclusive claim, and their ignorance of any adverse claim for more than twenty-one years be-

VOL. XI.—G

[Ewing v. Burnet.]

fore the present suit was brought. They further stated, as their conclusion from these facts, that the defendant had, from 1806, or 7, in the words of one witness, "had possession of the lot;" of another, that since 1804, "he was as perfectly and exclusively in possession, as any person could possibly be of a lot not built on or enclosed;" and of a third, "that since 1811, he had always been in the most rigid possession of the lot in dispute; a similar possession to other possessions on the hill lot." It was further in evidence, that Samuel Williams, under whom the plaintiff claimed, lived in Cincinnati, from 1803, till his death in 1824; was informed of defendant having obtained a deed from Symmes, in 1803, soon after it was obtained, and knew of his claim to the lot; but there was no evidence that he ever made an entry upon it, demanded possession, or exercised or assumed any exercise of ownership over it; though he declared to one witness, produced by plaintiff, that the lot was his, and he intended to claim and improve it when he was able. This declaration was repeated often; from 1803, till the time of his death, and on his death-bed; and it appeared that he was, during all this time, very poor; it also appeared in evidence, by the plaintiff's witness, that the defendant was informed that Williams owned the lot before the deed from Symmes, in 1803, and after he had made the purchase.

This is the substance of the evidence given at the trial, and returned with the record and a bill of exceptions, stating that it contains all the evidence offered in the cause: whereupon the plaintiff's counsel moved the court to instruct the jury that on this evidence the plaintiff was entitled to a verdict; also that the evidence offered by the plaintiff and defendant, was not sufficient, in law, to establish an adverse possession by the defendant: which motions the court overruled. This forms the first ground of exception by the plaintiff to the overruling his motions: 1. The refusal of the court to instruct the jury that he was entitled to recover: 2. That the defendant had made out an adverse possession.

Before the court could have granted the first motion, they must have been satisfied that there was nothing in evidence, or any fact which the jury could lawfully infer therefrom, which could in any way prevent the plaintiff's recovery; if there was any evidence which conduced to prove any fact that could produce such effect, the court must assume such fact to have been proved; for it is the exclusive province of the jury to decide what facts are proved by

[Ewing v. Burnet.]

competent evidence. It was also their province to judge of the credibility of the witnesses, and the weight of their testimony, as tending, in a greater or less degree, to prove the facts relied on; as these were matters with which the court could not interfere, the plaintiff's right to the instruction asked, must depend upon the opinion of the court, on a finding by the jury in favour of the defendant, on every matter which the evidence conduced to prove; giving full credence to the witnesses produced by him, and discrediting the witness for the plaintiff.

Now as the jury might have refused credence to the only witness who testified to the notice given to the defendant of Williams' ownership of the lot in 1803, and of his subsequent assertion of claim, and intention to improve it; the testimony of this witness must be thrown out of the case, in testing the correctness of the court in overruling this motion; otherwise we should hold the court below to have erred, in not instructing the jury on a matter exclusively for their consideration; the credibility of a witness, or how far his evidence tended to prove a fact, if they deemed him credible. This view of the case, throws the plaintiff back to his deed, as the only evidence of title; on the legal effect of which, the court were bound to instruct the jury as matter of law, which is the only question to be considered on this exception.

It is clear, that the plaintiff had the elder legal title to the lot in dispute, and that it gave him a right of possession, as well as the legal seisin and possession thereof, co-extensively with his right; which continued till he was ousted by an actual adverse possession; 6 Pet. 743; or his right of possession had been in some other way barred. It cannot be doubted, that from the evidence adduced by the defendant, it was competent for the jury to infer these facts; that he had claimed this lot under colour and claim of title, from 1804, till 1834; had exercised acts of ownership on, and over it, during this whole period; that his claim was known to Williams and to the plaintiff; was visible; of public notoriety for twenty years previous to the death of Williams. And if the jury did not credit the plaintiff's witness, they might also find that the defendant had no actual notice of Williams' claim; that it was unknown to the inhabitants of the place, while that of the defendants was known; and that Williams never did claim the lot, or assert a right to it from 1803, till his death in 1824. The jury might also draw the same conclusion from these facts, as the witnesses did; that the de-

fendant was during the whole time in possession of the lot, as strictly, perfectly, and exclusively, as any person could be of a lot not enclosed or built upon; or as the situation of the lot would admit of. The plaintiff must therefore rely on a deed of which he had given no notice, and in opposition to all the evidence of the defendant, and every fact which a jury could find, that would show a right of possession in him, either by the presumption of a release or conveyance of the elder legal title, or by an adverse possession. On the evidence in the cause the jury might have presumed a release, a conveyance, or abandonment of the claim or right of Williams, under a deed in virtue of which he had made no assertion of right from 1798, in favour of a possession, such as the defendant held from 1804; though it may not have been strictly such an adverse possession, as would have been a legal bar under the act of limitations. There may be circumstances which would justify such a presumption in less than twenty-one years: 6 Pet. 513: and we think that the evidence in this case was in law sufficient to authorize the jury to have made the presumption to protect a possession of the nature testified for thirty years; and if the jury could so presume, there is no error in overruling the first motion of the plaintiff.

On the next motion, the only question presented is on the legal sufficiency of the evidence to make out an ouster of the legal seisin and possession of Williams by the defendant; and a continued adverse possession for twenty-one years before suit brought.

An entry by one man on the land of another, is an ouster of the legal possession arising from the title, or not; according to the intention with which it is done: if made under claim and colour of right, it is an ouster; otherwise it is a mere trespass, in legal language the intention guides the entry, and fixes its character. That the evidence in this case justified the jury in finding an entry by the defendant on this lot, as early as 1804, cannot be doubted; nor that he claimed the exclusive right to it under colour of title, from that time till suit brought. There was abundant evidence of the intention with which the first entry was made, as well as of the subsequent acts related by the witnesses, to justify a finding that they were in assertion of a right in himself; so that the only inquiry is, as to the nature of the possession kept up. It is well settled that to constitute an adverse possession, there need not be a fence, building, or other improvement made: 10 Pet. 442: it suffices for this purpose, that visible and notorious acts of ownership are exercised over the premises in con-

troversy, for twenty-one years, after an entry under claim and colour of title. So much depends on the nature and situation of the property, the uses to which it can be applied, or to which the owner or claimant may choose to apply it; that it is difficult to lay down any precise rule adapted to all cases. But it may with safety be said, that where acts of ownership have been done upon land, which, from their nature indicate a notorious claim of property in it, and are continued for twenty-one years, with the knowledge of an adverse claimant without interruption, or an adverse entry by him, for twenty-one years; such acts are evidence of an ouster of a former owner, and an actual adverse possession against him: if the jury shall think, that the property was not susceptible of a more strict, or definite possession than had been so taken, and held. Neither actual occupation, cultivation, or residence, are necessary to constitute actual possession; 6 Pet. 513; when the property is so situated as not to admit of any permanent useful improvement: and the continued claim of the party has been evidenced by public acts of ownership, such as he would exercise over property which he claimed in his own right, and would not exercise over property which he did not claim. Whether this was the situation of the lot in question, or such was the nature of the acts done, was the peculiar province of the jury; the evidence in our opinion was legally sufficient to draw the inference that such were the facts of the case; and if found specially, would have entitled the defendant to the judgment of the court in his favour; they, of course, did not err in refusing to instruct the jury that the evidence was not sufficient to make out an adverse possession.

The remaining exceptions are to the charge of the court, in which we can perceive no departure from established principles. The learned judge was very explicit in stating the requisites of an adverse possession; the plaintiff had no cause of complaint of a charge, stating that exclusive appropriation by an actual occupancy; notice to the public, and all concerned of the claim, and enjoyment of profits by defendant, were all necessary. No adjudication of this court has established stricter rules than these: and if any doubts could arise, as to their entire correctness, it would be on an exception by the defendant. In applying them in the subsequent part of the charge to the evidence, there seems to have been no relaxation of these rules. The case put by the court, as one of adverse possession, is of a valuable sand bank exclusively possessed, and used by the defendant, for his

[Ewing v. Burnet.]

own benefit, by using and selling the sand; and this occupancy, notorious to the public and all concerned; which fully meets all the requisites before stated, to constitute adverse possession. If we take the residue of the charge literally, it would seem to superadd other requisites; as the payment of taxes, ejecting and prosecuting trespassers on the lot; its contiguity to the defendant's residence, &c.; but such is not the fair construction of the charge, or the apparent meaning of the court. These circumstances would seem to have been alluded to, to show the intention with which the acts previously referred to were done; in which view they were important, especially, the uninterrupted payment of taxes on the lot for twenty-four successive years; which is powerful evidence of a claim of right to the whole lot. The plaintiff's counsel has considered these circumstances as making a distinct case in the opinion of the court, for the operation of the statute; and has referred to the punctuation of the sentence, in support of this view of the charge. Its obvious meaning is, however, to state these as matters additional or cumulative to the preceding facts; not as another distinct case made out by the evidence, on which alone the jury could find an adverse possession. Punctuation is a most fallible standard by which to interpret a writing; it may be resorted to when all other means fail; but the Court will first take the instrument by its four corners, in order to ascertain its true meaning: if that is apparent on judicially inspecting the whole, the punctuation will not be suffered to change it.

It has also been urged, in argument, that as the defendant had notice of the claim of Williams, his possession was not fair and honest, and so not protected by the statute. This admits of two answers: 1. The jury were authorized to negative any notice; 2. Though there was such notice of a prior deed, as would make a subsequent one inoperative to pass any title, yet an adverse possession for twenty-one years, under claim and colour of title, merely void, is a bar; the statutory protection being necessary, only where the defendant has no other title but possession, during the period prescribed.

The judgment of the circuit court, is therefore affirmed.