# CHARLESTON.

STATE *v.* ALTIZER COAL LAND COMPANY *et al.*

(No. 5093.)

Submitted March 17, 1925.          Decided March 24, 1925.

1. TAXATION—*Possession Under Color of Title of Part of Unenclosed Tract, Embracing Tract Forfeited for Non-assessment, Held Actual and Continuous Possession of Latter Tract.*

Where by virtue of a number of deeds from various grantors one has had color of title for five successive years to a number of adjacent and contiguous tracts of unenclosed lands forming one compact boundary, including a tract, title to which has been forfeited to the state for non-assessment, and where for such five years such person has had actual physical possession of one or more of such tracts under claim to the whole boundary, his possession of the forfeited tract has been actual and continuous for the five year period, as contemplated by section 3, article XIII of the State Constitution, though his physical occupancy has not extended thereto. (p. 567).

2. SAME—*Inclusion of Forfeited Land by Grantor Without Color of Title in Deed to Corporation of Which He Was President Does Not Give Corporation Color of Title, or Deprive Former Owner or Its Grantee of Right to Redeem.*

If one without right or color of title, and for the sole purpose of acquiring the state's title to forfeited land, without the payment of the taxes accrued or which would accrue thereon against the former owner, includes such land with adjoining lands in a deed to a corporation of which he is president and a director and a large stockholder, and who is at the same time a director and stockholder of a corporation claiming the land, and in whose name or in the name of its predecessor it was forfeited, such deed, because of the fraud so practiced, will not constitute such color of title in the grantee with notice of the fraud, as will entitle it to take the state's title thereto by transfer under section 3, article XIII of the Constitution, or deprive the former owner or its grantee of the right of redemption in a suit brought by the Commissioner of School Lands to sell the land for the benefit of the school fund. (p. 577.)

3.   SAME—*Admitted Fraudulent Transfer of Forfeited Land, Although Not Pleaded by Claimant or State, Deprives Fraudulent Claimant of Right Thereto and of Right to Oppose Redemption by Former Owner.*

And although the facts constituting such fraud against the state and the former owner ·be not pleaded either by the state or by the claimant seeking to redeem the land in such suit, the facts constituting the fraud being admitted, will deprive the fraudulent claimant of the right to the land by transfer or otherwise, and of any right to oppose redemption of the land by the former owner thereof.   (p. 578.)

4.   SAME—*On Admission or Proof of Fraudulent Conveyance of Forfeited Land, Petition of Former Owner to Redeem, or Bill of State, Should Not be Dismissed Without Giving Redemptioner Right to Amend According to Proof.*

And if in such case the former owner should properly have pleaded such fraud in answer to the petition of such fraudulent claimant seeking to deprive him of his right of redemption, the facts showing the fraud being proven or admitted, the court should not dismiss his petition to redeem, nor the bill of the state as to the particular tract sought to be redeemed, without giving the redemptioner the right to amend his petition or answer so as to make out the case established by such proof. (p. 582.)

Appeal from Circuit Court, Logan County.

Suit by the State against the Altizer Coal Land Company and others.   From the decree rendered, the named defendant appeals.

*Reversed and remanded.*

*Chafin & Estep* and *E. T. England,* for appellant.
*Campbell & Campbell,* for appellee, Dingess Rum Coal Co.

MEREDITH, PRESIDENT:

The State of West Virginia, by bill filed in the Logan County Circuit Court at June, 1919, rules, seeks to sell for the benefit of the school fund 16 tracts of land alleged to have been omitted from the land books for more than five years. By petition and answer the Altizer Coal Land Company, under §17, ch. 105, Barnes' Code, 1923, asserts the right as former owners thereof to redeem a tract of 66 acres, being

tract No. 14 in plaintiff's bill. The Dingess Rum Coal Company in an answer filed claims that the title thereto is transferred to and vested in it, basing its case upon possession and payment of taxes under sec. 3, of article XIII of the State Constitution. The real contest as now waged is between the two coal companies. The circuit court sustained the claim of the Dingess Rum Coal Company and the Altizer Coal Land Company alone appeals.

In its petition the Altizer Coal Land Company deraigns the title to tract No. 14 from the commonwealth of Virginia to the petitioner, admits that it is forfeited to the state for failure of the former owners to have the land charged on the land books for more than five successive years since 1869, but asserts its right to redeem by paying all of the taxes charged and chargeable against the property.

The Dingess Rum Coal Company denies that the Altizer Coal Land Company has any right in the property or any right of redemption thereof. It avers that by deed dated June 1, 1909, recorded in the Logan County Clerk's office, James L. Caldwell and wife conveyed said tract 14 to it and that it caused said tract to be entered upon the land books of Logan County for the years 1910 and 1911 as part of a tract of 301.2 acres. It avers that the deed described a certain boundary of land by metes and bounds, as containing 301.24 acres, and that as so entered on the land books as above stated, defendant, the Dingess Rum Coal Company paid the taxes assessed thereon for the years 1910 and 1911; that for the year 1912 and subsequent years the tract of 301.2 acres was consolidated on the land books with other contiguous tracts, and that the taxes assessed thereon have been regularly paid to and including the year 1918. It alleges that the taxes for the year 1919 will be paid when due. It avers that it has had actual possession of the 66 acres from the date of the Caldwell deed to the present time; that the 301.2 acres formed a part of a large boundary of land owned and claimed by it, the Dingess Rum Coal Company; that during the whole of the time from 1909 to the present time it has had actual residence, cultivation and enclosure of divers and sundry parts thereof and such possession has been

continuous, actual, exclusive and notorious under the claim of ownership; and it has taken the benefit of the forfeiture, if any, of said 66 acres of land and whatever title may have once vested in the State of West Virginia by forfeiture or otherwise is now vested in said company, and it prays that the court may so decree, and that the prayers of the State's bill and of the petition of the Altizer Coal Land Company be denied.

The proof in this case consists of a stipulation and a supplemental stipulation of facts. By them the Altizer Coal Land Company's deraignment of title to the 66 acres, and the forfeiture thereof for non-assessment, as set out in its petition is conceded. The contest is as to the Dingess Rum Coal Company's right to the tract under the constitutional provision, sec. 3, article XIII. That section reads:

"All title to lands in this state heretofore forfeited, or treated as forfeited, waste and unappropriated, or escheated to the State of Virginia, or this State, or purchased by either of said States at sales made for the non-payment of taxes and become irredeemable, or hereafter forfeited, or treated as forfeited, or escheated to this State, or purchased by it and become irredeemable, not redeemed or released or otherwise disposed of, vested and remaining in this State, shall be, and is hereby transferred to, and vested in any person (other than those for whose default the same may have been forfeited or returned delinquent, their heirs or devisees), for so much thereof as such person has, or shall have had actual continuous possession of, under color or claim of title for ten years, and who, or those under whom he claims, shall have paid the State taxes thereon for any five years during such possession; or if there be no such person, then to any person (other than those for whose default the same may have been forfeited, or returned delinquent, their heirs or devisees), for so much of said land as such person shall have title or claim to, regularly derived, mediately or immediately from, or under a grant from the Commonwealth of Virginia or this State, not forfeited, which but for the title forfeiture, would be valid, and who, or those under whom he claims has, or shall

have paid all State taxes charged or chargeable thereon for five successive years, after the year 1865, or from the date of the grant, if it shall have issued since that year; or if there be no such person, as aforesaid, then to any person (other than those for whose default the same may have been forfeited, or returned delinquent, their heirs or devisees), for so much of said land as such person shall have had claim to and actual continuous possession of, under color of title, for any five successive years after the year 1865, and have paid all State taxes charged or chargeable thereon for said period.''

The question is: has the company properly taken advantage of the above quoted provision? It says it has had claim to and actual continuous possession of the 66 acres under color of title, and has paid the taxes thereon for five successive years. Its contentions on all of these points are disputed by the Altizer Coal Land Company.

In the discussion it will be impossible to keep separate at all times the several elements which are necessary to constitute a transferring and vesting of the title under the constitution, but as the nature of the Dingess Rum Coal Company's possession constitutes perhaps the chief object of attack, we will address ourselves first to that matter. The stipulated facts show that by deed dated June 1, 1909, J. L. Caldwell and wife conveyed to the Dingess Rum Coal Company a tract of land recited as containing 301.24 acres, and that under the belief that the acreage set out in the deed was correct that company had the tract so charged on the land books. The facts further show, however, that Caldwell's surveyor ascertained the tract of 66 acres ''school lands'' belonging to the State, whereupon, at Caldwell's instance, the boundaries of the tract conveyed to the Dingess Rum Coal Company were so described in the deed of June 1, 1909, as to include therein the said 66 acres as well as the 301.24 acres, and that in fact the actual acreage was 382.53 acres. The recital of the acreage in the deed remained 301.24 acres.

It appears that from 1905 to the present time the Dingess Rum Coal Company has owned a large compact body of land situate on certain tributaries of Guyandotte River,

composed of many adjoining and coterminous parcels, con-
veyed to it at different times by various deeds, which com-
pact boundary adjoins the tract described in the Caldwell
deed as 301.24 acres. It appears further that in 1905 and at
sundry dates since that time the Dingess Rum Coal Company
has leased divers portions of its large boundary to various
persons for coal mining purposes, and that many of such per-
sons have been in actual, visible and exclusive possession of
their leaseholds, mining and shipping coal therefrom, con-
tinuously since 1905, paying royalties to their lessor, the
Dingess Rum Coal Company. Many improvements such as
dwellings and railroads have been erected and used upon
the large boundary by the lessees in connection with the
operations, and commencing with the year 1903 or 1904, and
continuing from time to time since that year, the Dingess
Rum Coal Company has cut and sold timber from its boun-
dary. While removing its timber, much of the property
has been occupied by houses for labor, saw mill sites and
equipment. From 1905 to 1916 the company maintained
tenants on its lands, which tenants occupied residences with
their families and cultivated portions of the soil. But, and
this is the point relied upon by the Altizer Coal Land Com-
pany, since the year 1909, no tenant has resided upon the
tract described as 301.24 acres, nor has any coal been mined
therefrom except for the past two years preceding the date
of the stipulation, June 21, 1922. On June 1, 1917, the
Dingess Rum Coal Company leased two tracts, one of 904.49
acres, embracing the 301.24 acres, the other of 187 acres, to
the Thurmond Coal Company. The latter company entered
immediately upon the 187 acres and installed mining ma-
chinery and equipment thereon, but drove its entries in the
904.49 acres. Within the last two years as aforesaid the
entries reached the 301.24 acres, but not the particular 66
acres thereof constituting tract No. 14 of plaintiff's bill,
the tract in controversy. No coal has ever been mined from
it. It is still in a state of nature, uncleared and unenclosed.
Such is and has been the possession of the 66 acres. Ob-
viously, there has been no actual physical possession but the
Dingess Rum Coal Company says that is not necessary, and

no doubt the Altizer Coal Land Company would concede as much. The Dingess Rum Coal Company invokes the principle that one in actual possession of part of a boundary of land under color of title to the whole is deemed to be in possession to the exterior boundaries of the whole. This proposition the Altizer Coal Land Company does not attack. But the Dingess Rum Coal Company further asserts that having been for many years in possession of tracts adjoining the 66 acres under color of title, and having had color of title to the 66 acres since 1909 its possession has extended to the 66 acres as well. This proposition the Altizer Coal Land Company vigorously assails.

We stated above that the Altizer Coal Land Company does not seem to dispute the general proposition that possession of part of a tract under color of title to the whole extends to the entire boundary. It could hardly do so in a case of this kind, for in *State* v. *Morgan,* 75 W. Va. 92, 83 S. E. 288, we held:

> "The possession of an owner who under color of title enters upon lands which include within their exterior boundaries part of a tract title to which vested in the State by forfeiture, and for ten years actually occupies portions of the inclusive tract but no part of the forfeited land, being actual as to such portions, will be held and treated, under §3, Art. 13, Const., as actual possession of so much of the forfeited tract as is included within the bounds of the larger area not in actual or virtual possession of the State, the former owner or others claiming under them."

But counsel for the Altizer Coal Land Company say that case is not this case. There the claimant under the constitution held color of title to a boundary of 9129 acres of land under one deed from one grantor. The forfeited land, a tract of 74.89 acres, was in that boundary and although the claimant had never occupied the 74.89 acres, it had paid the taxes regularly on the entire boundary, and through its lessees it had cleared, tilled and mined coal from many parts of lands adjacent to the forfeited tract. Counsel point out that

in this case the Dingess Rum Coal Company does not hold one large boundary including the forfeited tract under one color of title, but that it has accumulated a large number of separate, though contiguous tracts, under divers deeds, and that by actual possession of certain of those tracts it is seeking to extend its possession to the adjacent forfeited tract. Concisely, counsel say that the cases do not hold, and reason does not dictate, that if A holds one deed constituting color of title to "Blackacre", and another constituting color of title to "Whiteacre," that possession of one would also be possession of the other, even though the two tracts be contiguous. They refer to the case of *State* v. *Haymond*, 84 W. Va. 292, 100 S. E. 86, relied upon by the Dingess Rum Coal Company, and urge that that case is not authority for the latter company's position here. We there said in point one of the syllabus:

> "Actual and continuous possession of any part of any one of two or more contiguous tracts of land, forfeited to the State for non-entry for taxation and non-payment of taxes, by a person claiming all of them under color of title, is a compliance with the requirements of sec. 3, Art. XIII, Constitution, and sec. 40, ch. 31, Code as to the character of the possession."

It is argued here that in the foregoing case the facts and the syllabus quoted show that the claimant under the constitution, while claiming title to the forfeited tracts under separate colors of title, and in actual possession of one tract only, nevertheless did have actual possession of at least a part of a forfeited tract. As a matter of fact, from the opinion it is not certain that the claimant did not have at least a shadow of physical possession of each of the forfeited tracts. Here there was no actual physical possession of a forfeited tract, and it is claimed that that circumstance differentiates the two cases.

Counsel then say that the case of *State* v. *U. S. Coal & Oil Company*, 86 W. Va. 256, 103 S. E. 50, shows that the same color of title must include all of the tracts claimed. Counsel

misconstrue that case. There two tracts were forfeited, and the
U. S. Coal & Oil Company held a deed from Thomas Harvey
constituting color of title to a large boundary of land em-
bracing the forfeited parcels.   On the point in question it
was in substance the case of *State* v. *Morgan* over again.  The
claimant showed actual possession of parts of the boundary
held under the Harvey deed and we were bound to hold that
such possession extended to the whole boundary.

Counsel for Dingess Rum Coal Company deny squarely
the position taken by the Altizer Coal Land Company.   They
state their proposition boldly as follows:

> "One in occupancy of land under a deed, who
> later obtains another deed, for an adjoining or con-
> tiguous tract which is vacant or forfeited, is in the
> actual possession of such adjoining tract as defined
> by sec. 3, art. 13, Constitution of West Virginia."

They develop their point by citing a number of cases
deemed by them controlling.   Foremost among them, and
the one upon which most of the later ones are based is *Over-
ton's Heirs* v. *Davisson*, 1 Grat. (Va.) 212.  We have closely
studied that decision and are frank to say that it is difficult
to state from the opinion, what was actually and necessarily
decided.   It sufficiently appears that Overton's Heirs, as
demandants, brought a writ of right in the circuit court of
Harrison County in 1831 against William Davisson.  Plain-
tiffs claimed under a patent dated May 23, 1786, for 3000
acres of land.    Davisson claimed under two patents, one
dated January 3, 1787, for 400 acres, the other dated January
23, 1787, for 800 acres, but disclaimed title to all but 500
acres.    There was a controversy as to the boundary lines,
but the opinion is not fully understandable on that issue.
The point, so far as the present case is concerned, is that the
court expressed itself as follows in the opinion:

> "The court is further of opinion, that where the
> land in controversy is embraced by conflicting grants
> from the commonwealth, to different persons; and
> the junior patentee enters thereupon, and takes and
> holds actual possession of any part thereof, claim-

ing title to the whole under his grant.; that such adversary possession of part of the land in controversy, is an adversary possession of the whole, to the extent of the limits of the younger patent; and to that extent is an ouster of the seisin or possession of the older patentee, if the latter has had no actual possession of any part of the land within the limits of his grant. But that if the older patentee, at the time of such entry of the younger patentee, is in the actual possession of any part of the land in controversy; then that the latter can gain no adversary possession, beyond the limits of his mere enclosure, without an actual ouster of the older patentee, from the whole of the land in controversy. And, moreover, upon the question of adversary possession, it is immaterial whether the land in controversy, be embraced by one, or several coterminous grants of the older patentee; or one or several coterminous grants of the younger patentee; in either case, the lands granted to the same person by several patents, must be regarded as forming one entire tract.''

Counsel for the Dingess Rum Coal Company say that the above language to the effect that it was immaterial in that case whether the land in controversy was embraced by one, or several coterminous grants of the younger patentee, is authority for their position that it is immaterial here whether the Dingess Rum Coal Company acquired color of title to its large boundary of tracts of land under one deed or several deeds. Counsel have considered apparent support for their construction of the Overton case. In the case of *Braxton* v. *Rich,* tried before Judge Jackson as Judge of the United States Court for the District of West Virginia, and reported in 47 Federal Reporter at page 178, plaintiffs, the heirs of Allen T. Caperton, brought suit to annul the deeds under which the defendants claimed title, and thereby to remove the cloud created on the title of plaintiffs. Plaintiffs undertook to establish their possession of the lands involved. These lands consisted of five surveys or grants issued by the Commonwealth of Virginia, the first on March 2, 1795, the last on February 1, 1858. These grants were to different persons, but Caperton derived his title mediately from them.

They were coterminous surveys. It was shown that through
certain tenants Caperton had been in actual physical pos-
session of one of the surveys, and, Judge Jackson said: ''As
each of the said tracts adjoined and were contiguous to his
other lands, above named, his actual possession of those
lands hereinafter mentioned extended to and over these
several tracts also, from and after the dates of his deeds
therefor.'' And in the syllabus:

> ''Several adjoining and contiguous tracts and par-
> cels of land, owned and held by the same person un-
> der different titles, constitutes for the purposes of
> possession but one tract in law, and, if the owner
> thereof has the actual possession and occupation
> of any part of said lands, such possession, in the
> absence of an adverse possession by another of some
> part of the lands so held and owned by him, extends
> to the exterior boundaries of the whole of his said
> lands.''

That case was appealed to the United States Supreme Court,
and is published in that court's reports as *Rich* v. *Braxton,*
158 U. S. 375. Mr. Justice Harlan speaking for the court,
reviewed the facts, and stated:

> ''In considering the question of the possession of
> the various tracts of land claimed by the plaintiffs,
> as heirs at law of Caperton, the court below proceeded
> upon the ground that the surveys being coterminous
> all the tracts should be regarded as one tract. 'Upon
> the question of adversary possession', the Supreme
> Court of Appeals of Virginia said in *Overton's Heirs*
> v. *Davisson,* 1 Grat. 211, 224, 'it is immaterial whether
> the land in controversy be embraced by one, or sev-
> eral coterminous grants of the older patentee; or
> one or several coterminous grants of the younger
> patentee; in either case, the lands granted to the
> same person by several patents, must be regarded as
> forming one entire tract.' The same principle was
> announced in *Ewing* v. *Burnett,* 11 Pet. 41, 53, and in
> *Simmons Creek Coal Co.* v. *Doran,* 142 U. S. 417,
> 443.''

As a matter of fact, the same principle did not control the decision in either *Simmons Creek Coal Co.* v. *Doran* or *Ewing* v. *Burnett.* The first was an appeal from the United States Court for West Virginia, but there the claimant under sec. 3, art. XIII of the State constitution showed actual physical possession of the 200 acres in controversy, having partly enclosed it and grazed cattle thereon. In *Ewing* v. *Burnett,* the court simply held that where the owner of an adjoining lot, had for a sufficient number of years claimed and exercised the exclusive right of digging gravel from the lot in controversy, as well as certain other rights, under color of title, there was adequate proof of possession. See similarly : *Roller* v. *Armentrout,* 118 Va. 173, 86 S. E. 906.

Counsel place considerable reliance on *State* v. *Harman,* 57 W. Va. 447, 50 S. E. 828. That was a suit to sell two forfeited tracts of land both of which had been granted by the Commonwealth of Virginia to H. A. Harman, E. F. Harman, and Isaiah Smith. Defendants, claiming under the grants, sought to redeem, admitting that their title had become forfeited by omission from the land books. The trustees of the Flat-Top Land Association, claiming mediately from a tax-sale purchaser, asserted that the title to the tracts was vested in them under the Constitution. The issue arose whether the physical possession of one tract by the trustees extended to contiguous tracts, as to which President BRANNON said :

> "Argument has been made that there must be possession of each tract, and that possession of one of several adjoining tracts will not do. How can we so hold in opposition to *Overton* v. *Davisson,* and other law cited above?"

But note the facts of that case as shown by the very next words of the opinion :

> "And in this connection I remark that the trustees of the Flat-top Association purchased these tracts by executory contract from Silas R. Divine, October 12, 1887, which describes the tracts separately; but by the deed from Divine to the trustees, April 12,

> 1889, all the tracts were conveyed *in solido* as a unit, as one tract, by an outer boundary including all the tracts as one."

It would seem that the court there perceived the distinction for which the Altizer Coal Land Company is now contending. It seems to us that because the trustees of the Flat-top Association held all the tracts *in solido* under one instrument as color of title, that case so far as its actual decision is concerned, might not be controlling on the one now before us.

Another case which by its language, but not necessarily by its decision lends support to the view of the Dingess Rum Coal Company is *Garrett* v. *Ramsey*, 26 W. Va. 345. In a note in which he dissented from the views of the majority of the court on certain issues of the case, Judge GREEN used this language:

> "This rule (the rule that the extent of actual possession is coextensive with the color of title) is so absolute and controlling that if the same owner or claimant has several co-terminous tracts under different claims of title, and he has actual possession of part of but one of such tracts, he will in law be regarded and treated as having the actual possession of the whole of each and all of said coterminous tracts. *Overton* v. *Davisson,* 1 Grat. 216, 229."

The above language was adopted verbatim by Hutchinson in his treatise on Land Titles, section 416.

The foregoing expressions of this court, the Supreme Court of Appeals of Virginia, and the Supreme Court of the United States, though perhaps dicta in all instances, reveal how very deeply ingrained into our jurisprudence is the doctrine of *Overton's Heirs* v. *Davisson*. Those principles which Judge GREEN and Judge BRANNON evidently considered as settled may not now be dismissed lightly. However, we have gone further in our endeavor to find the correct solution. In 2 C. J., Adverse Possession, sec. 515, we read:

> "Where a claimant has color of title to several tracts derived from different sources, such tracts

are to be considered separate and distinct, and his
actual possession of a part of one will not be ex-
tended by construction over the others.''

Certainly the above expression seems to sustain the position
of the Altizer Coal Land Company, and an examination of
the cases cited bears out the author's proposition.   Courts
so holding believe that possession can be extended no further
than the bounds of the particular tract as defined by the color
of title under which it is claimed.   But turning to equally
reliable authority, we find:

"And it seems that it is immaterial whether the
color of title is in one instrument covering the en-
tire tract, or several instruments each purporting
to convey a portion thereof, and that the actual pos-
session of either part so conveyed by separate in-
struments will give constructive possession to all if
they constitute one tract.''   1 Am. & Eng. Ency.
Law, 2d. ed. p. 864.   And cited as authority are
the familiar cases, *Overton* v. *Davisson; Braxton* v.
*Rich,* and others.

The Altizer Coal Land Company presents a forceful ar-
gument.   Why should one be deemed to be in possession of
an adjoining forfeited tract, because of his possession of
another tract, with separate colors of title to both?   May
he not proceed to acquire color of title to additional adjoin-
ing forfeited tracts ad infinitum, and without changing the
character of his possession claim those also under the consti-
tution?   Perhaps that is a situation more possible than prob-
able.   The construction which the American and English En-
cyclopedia of Law has put upon the cases seems at once ac-
curate, and more equitable than certain other expressions
which we have quoted.   It is there stated that actual possession
of one part will give possession to all if they constitute one
tract.   Was not that in fact the holding in *Overton's Heirs*
v. *Davisson?*   There the two grants of the junior patentee
covered large coterminous areas of uncultivated and un-
enclosed lands, in fact one boundary.   The facts in the
present case are that since 1905 the Dingess Rum Coal Com-

pany has owned, and still owns "a large compact body of land, situate on Dingess Rum and waters, Rum Creek and waters, Lawsons Branch, and on the Guyandotte River, composed of many adjoining and coterminous tracts and parcels of land conveyed to it at different times by various and sundry deeds, which compact boundary adjoins the aforesaid tract of 301.24 acres." Counsel for the Altizer Coal Land Company, however, say that where one goes into possession under color of title to one tract such possession is limited by the boundaries indicated in the color of title to that tract, that his intentional occupancy could extend no further. Were it a matter of first impression, our inclination might be to agree with that principle, but the sense of opinion in this jurisdiction is seemingly that where one is in possession of a compact boundary of open lands, it is not presumed that the possession is limited by any particular one of his instruments of title. He claims color of title, not to one but to all of the several contiguous tracts making up his boundary. He recognizes as color of title, not one particular deed, but all of the muniments of title under which he holds, and in the case of forfeited lands, his possession must follow the broader conception. Authorities binding on us have so regarded the situation. We therefore hold that the Dingess Rum Coal Company's actual and continuous possession of the 66 acres under color of title for 5 years since 1909, the date of the Caldwell deed, has been established.

That the 66 acres have been regularly assessed for taxes and that the taxes have been paid thereon for five successive years can not be successfully disputed on the record. While it is true that the tract conveyed in the Caldwell deed was charged as 301.24 acres in 1910 and 1911, whereas it in fact contained 382.53 acres, the tract was nevertheless on the land books, and there is ample authority that the discrepancy in acreage does not vitiate the charge. *The White Flame Coal Co.* v. *Burgess*, 86 W. Va. 16, 102 S. E. 690.

Counsel for the Altizer Coal Land Company raise yet another objection to the color of title of the Dingess Rum Coal Company. They say that it was fraudulently procured. The stipulated facts show that J. L. Caldwell, when he made

the deed to the Dingess Rum Coal Company in 1909, was a stockholder, a director and the president of that corporation. He was also a stockholder and a director of the Altizer Coal Land Company. On the theory that knowledge must have been imputed to him of the Altizer Coal Land Company's right to redeem, and that through him knowledge of the Altizer Coal Land Company's right must have been brought home to the Dingess Rum Coal Company, it is urged that his making of the deed was fraudulent. Whether this was a valid argument or not, it can be no ground of decision here. Fraud, if relied upon, either at law or in equity, must not alone be proved, it must be pleaded. Cases in equity are made upon the pleadings, the decrees are based upon the pleadings, and this is nowhere more true than where fraud is relied upon by one of the parties.

> "Fraud is never presumed, and in order to entitle a party to relief either at law or in equity on that ground, it is essential that the fraud be distinctly alleged in the pleadings so that it may be put in issue and evidence thereof given. This rule is applicable as well to pleadings of the plaintiff as those of the defendant. In the absence of such an allegation, evidence of fraud will not be received at the trial." *Interstate Finance Co.* v. *Schroeder,* 74 W. Va. 67, 81 S. E. 552; *Fleenor* v. *Hensley,* 121 Va. 367, 93 S. E. 582.

### ON REHEARING.

MILLER, JUDGE:

Upon the rehearing, and after the argument by counsel, and consideration thereof, we are of opinion, for the reasons stated, to adhere to the several propositions comprehended in the first point of the syllabus in the written opinion prepared by Judge MEREDITH on the original hearing.

On the second proposition, however, it is undoubtedly true as a general rule that where fraud is relied on it must be pleaded as well as proved. This rule is especially applicable where a plaintiff in equity relies on fraud as the basis of re-

lief against defendant. As to the defendant fraud may generally be proved under the general issue, as at common law. *Bowyer* v. *Continental Casualty Company,* 72 W. Va. 333, 337, and cases cited. This rule is considered in *Interstate Finance Company* v. *Schroder,* 74 W. Va. 67, 71, cited by Judge MEREDITH in the original opinion. Is the fraud relied on in this case available to appellant without pleading of some kind putting the fact in issue? But for the pretentions of the Dingess Rum ·Coal Company, appellant's right to redeem the 66 acres would be and remain beyond controversy. The facts stipulated by counsel respecting appellant's rights and title put this proposition beyond cavil. Its petition pleads all the essential facts agreed upon. But the Dingess Rum Coal Company, impleaded as a claimant to the land, interposes its claim to transfer under the constitution, and opposes redemption by appellant; it prays on the facts alleged by it, that the Altizer Coal Land Company be not permitted to redeem the land. Its petition is in the nature of an answer to appellant's petition, and seeks relief against the owner of the older and admitted title. To prevail over the Altizer Coal Land Company, it is bound to show by pleading and proof that it lawfully acquired the title of the State to the forfeited land by complying with all the requirements of the law to that end. In its effort to do this and to establish its color of title, it first pleads the deed of Caldwell and wife to it, of June 1, 1909. At the time Caldwell executed this deed to the Dingess Rum Coal Company, he owned an adjoining tract of 301.24 acres; but it is not pretended that he had the semblance of right or title to the 66 acres; on the contrary it is agreed that in surveying the land preparatory to executing his deed, his engineer discovered the outlying 66 acres, and on appraising Caldwell of the fact, he was directed to include it in the survey; and Caldwell included it by description in his deed to the appellee company, but as a tract of 301.24 acres only, manifestly for the purpose of evading taxation on the additional acreage, as the grantee did for nearly ten years thereafter, and up to the year 1918; and it is conceded further that the only purpose of so compassing the additional acreage was to get the State's

title to the 66 acres by constitutional transfer, but in such a way as to escape the imposed burden of taxation. Agreeably to our holding in *State* v. *West Branch Lumber Company,* 64 W. Va. 673, 691, one who thus sets out to obtain the title of the State and to defeat the former owner, must begin with an honest belief in the verity of his claim, and with a purpose to fulfill the obligation exacted by the State in aid thereof. To this extent at least he must have a bona fide claim. The rule may be different when he sets up a claim and seeks to acquire title to another's land by possession under an adverse and hostile title. But a scheme conceived in fraud, and without shadow of right to deprive the State of her title to forfeited land, and the former owner of his lawful right of redemption, should not succeed in a court of equity, when the State sues and impleads such conflicting claimants. These were the principles upon which we denied appellees the right to prevail over the appellant King, in *State* v. *King,* 77 W. Va. 37. The fourth point in the syllabus in that case is as follows: ''A deed made by a person to a trustee for himself, or to himself by another, at his solicitation and without consideration, for land he does not own nor occupy and in which he has no interest, or for such land in addition to his actual possession, with specific intent and purpose to use the same as color of title, cannot be so used by him. His fraud denies it the virtue, force and effect of color of title in his hands.''

It seems to us that the claim of Caldwell and the Dingess Rum Coal Company as against the rights of the Altizer Coal Land Company and the State, to the 66 acres involved must be disposed of upon the principles announced in the King case. The facts pleaded or agreed to bring the case presented here clearly within the rule of that case, unless for want of proper pleadings or otherwise it can not be so disposed of. To allow the Dingess Rum Coal Company to prevail over the State and the appellant, the State would sustain a loss of its taxes from 1909 to 1918 on the 66 acres, and appellant of its right to redeem. It is a very pertinent fact bearing on the equities of the Altizer Coal Land Company, and a fact stipulated by counsel, that at the time

Caldwell made his deed to the Dingess Rum Coal Company, he was a director and stockholder, owning twenty-two percent of the stock, of the Altizer Coal Land Company, and charged with knowledge of this company's rights in the land. He was at the same time president, and a director and a very large stockholder in the Dingess Rum Coal Company. Manifestly his interest in the latter company far exceeded his interest in the Altizer Coal Land Company. What additional consideration, if any, he received directly for including the 66 acres in his deed does not appear; but may it be safely assumed that, if it had not been to his interest to include the land in his deed to the Dingess Rum Coal Company, rather than to conserve it for the Altizer Coal Land Company, to which he owed a duty in respect thereto, he would not have undertaken to so acquire the rights of the State and the Altizer Company?

We must not be understood as tending to cast any aspersions on the name or memory of Mr. Caldwell, a most honorable and respected business man and citizen. We are speaking only of the legal effect of his transactions respecting this land. As against the Altizer Coal Land Company, his transaction could not be allowed to stand for a moment. But the Dingess Rum Coal Company relies also upon its position as a purchaser from Caldwell, for a valuable consideration, of the land in controversy. The record gave it constructive notice at least that Caldwell had no title to the land, that the title was in the State with right of redemption in the Altizer Coal Land Company. Besides all this, Caldwell was president and a director and large stockholder of the grantee in his deed, and to that extent he was deeding the land to himself, just as in the King case, McDonald without right or title conveyed the land to Lowry, Trustee; and it was admitted that the beneficiaries of the trust were the grantee and two other McDonalds. Wherefore, did not the Dingess Rum Coal Company have full and complete notice through Caldwell of his want of title and of the fraud involved in the transaction? It does not appear who or what officer represented the grantee company in the transaction with Caldwell. Not unlikely it was Caldwell himself, he being

its executive head and so largely interested. His personal interests were not likely opposed to the interests of the company, and his position of grantor, and in effect grantee also, were not so incompatible as not to import the notice he had to the company also. The rule recognized in prior decisions is that: ''When an officer of a corporation does an act which constitutes fraud upon a third person, or upon another corporation, of which he is also an officer, the first mentioned corporation is chargeable with knowledge of the nature of the transaction, although the fraud is perpetrated for his own benefit, where he also represents the corporation in the transaction.'' *Powers-Taylor Drug Co.* v. *Faulconer*, 52 W. Va. 581, 592. Of course, notice to one of the directors of a matter affecting the interests of the corporation which it is to the interest of such director to conceal, is not notice to the corporation. *Bank* v. *Lowther-Kaufman Oil Co.*, 66 W. Va. 505; *Dollar Savings & Trust Co.* v. *Crawford and Ashby*, 69 W. Va. 109, 117; *Rusmissell* v. *White Oak Stave Co.*, 80 W. Va. 400. It is only where an officer while acting for himself acquires notice or knowledge of the fact, that such notice will not be imputed to the principal. 2 Thompson on Corporations, (2nd ed.)., §1655. In 4 Fletcher Cyc. Corp., §2245, it is said that where the interests of the corporation and of its officer or agent are in reality not adverse, the general rule does not apply. In this case the interests of Caldwell and the Dingess Rum Coal Company were in reality practically the same. There is no conflict between the two interests. So we hold that the knowledge and notice of Caldwell of appellant's rights, and of the invalid and fraudulent character of Caldwell's title or claim to the 66 acres must be imputed to the grantee in his deed.

But further on the subject of want of pleading, if we should hold as on the original hearing, that the fraud should have been pleaded, should we not on the facts agreed, have given appellant an opportunity to amend its pleadings so as to make out such a case as the facts warranted? We have examined the record in *State* v. *King*, cited and relied on by counsel for appellant. The fraud does not appear to have been set up by any pleading in that case; the point does not

appear to have been raised.   But when a plaintiff, in this case a cross-plaintiff, comes into the court to oppose the rights of others, and shows by his evidence or facts stipulated that the right and title relied on to defeat the other party originated in fraud, he proves himself out of court.   He must come with clean hands.   In *State* v. *Central Pocahontas Coal Co,*. 83 W. Va. 230, 242, a school commissioner's suit like this, we held that it was not error to allow a defendant to file an amended and supplemental answer, when the matter set up therein was of such a character that it was necessary that the same should be before the court for a proper determination of the matters involved in the suit and not contradictory of the matters alleged in the original answer.   And we have decided here more than once, that where the court doubts the right of plaintiff to relief on the case stated in his bill, and a good cause for relief appears by the proofs, the decree below should be reversed and plaintiff given leave to amend his bill.   *Blue* v. *Campbell,* 57 W. Va. 34, 36; *Lamb* v. *Laughlin,* 25 W. Va. 300; *Doonan* v. *Glynn,* 26 W. Va. 225, 228; *VanWinkle* v. *Blackford,* 33 W. Va. 573; *Blumberg Bros. Co.* v. *King,* 98 W. Va. 275.   And this rule respecting amending pleadings applies also in actions at law.   *Gilchrist* v. *Oil Company,* 21 W. Va. 115.

For the foregoing reasons we are of opinion to reverse the decree below, and to remand the cause to be further proceeded with in accordance with the rules and principles herein declared.

*Reversed and remanded.*